Anthony Leon KIMBLE *v.* STATE of Arkansas

CR 97-909          959 S.W.2d 43

Supreme Court of Arkansas
Opinion delivered January 22, 1998

*Darrel Blount*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Leon A. Kimble was convicted of aggravated robbery and sentenced to life imprisonment. He raises three points for reversal; all lack merit, so we affirm.

Kimble first challenges the trial court's refusal to suppress the testimony of the victim, Bob Wilhite, concerning a pretrial photographic lineup which Kimble claimed was unduly suggestive and tainted Wilhite's in-court identification of him.

Wilhite owned a restaurant in Mt. Ida where he was robbed and shot twice on September 16, 1996. After the crime (and later at trial), he described his assailant to the police as a clean-shaven, short-haired black male who had a light complexion, thin lips, and a thin, narrow nose. The perpetrator carried a weapon Wilhite believed to be a blue steel .32 automatic. Based on this description, the police uncovered two separate suspects, Kimble and a L. A. Fugate. The police initially placed Fugate's picture along with five other black males in a photo lineup and showed the lineup to Wilhite, who could not identify any one of the men as the one who shot him. After obtaining Kimble's picture, a second lineup was shown to Wilhite. This time, the lineup contained the same photos as appeared in the first lineup, but differed only by the substitution of Kimble's picture for Fugate's. Wilhite quickly identified Kimble as his assailant.

In a pretrial motion, Kimble requested that the results of the lineups be suppressed because the manner in which the police handled the photographs was unduly suggestive.[1] After the trial court took Kimble's motion under advisement, it ultimately ruled that, although one could very seriously argue the second photo lineup was suggestive, the totality of the circumstances were such that the trial court found Wilhite's identification was sufficiently reliable for the matter to be submitted to the jury. The trial court applied applicable case law correctly.

Our court has held that, even when the identification procedure is impermissibly suggestive, the trial court may determine that under the totality of the circumstances the identification was sufficiently reliable for the matter to be submitted to the jury, and then it is for the jury to decide the weight the identification testimony should be given. *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996). In determining reliability, the following factors are considered:

> (1) the prior opportunity of the witness to observe the alleged act;
> (2) the accuracy of the prior description of the accused;
> (3) any identification of another person prior to the pretrial identification procedure;
> (4) the level of certainty demonstrated at the confrontation;
> (5) the failure of the witness to identify the defendant on a prior occasion; and
> (6) the lapse of time between the alleged act and the pretrial identification procedure. *Id.*

Here, Wilhite related that he could see Kimble "very well" when the robbery was committed. He said that he remembered the perpetrator was a black male with thin facial features and light complexion, and that his features were "pro-

---

[1] The State contends that, because Kimble failed to reproduce the lineup photographs and include them in the abstract as required under Rule 4-2(a)(6) of the Rules of the Supreme Court, the court should not consider the point of error. *See* per curiam at Appendix at 329 Ark. _____ (June 30, 1997), where court redesignated Arkansas Supreme Court Rule 4-2(a)(5) to be (a)(6). Because Rule 4-3(h) requires us to review all rulings adverse to appellant evidencing prejudicial error in life cases, we address Kimble's argument. We note that this court mistakenly failed to perform a 4-3(h) review in a similar case. *See Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995).

nounced and well lit." Wilhite never identified any other person as the perpetrator and added that the robber's slim facial features ·were easy to recognize. When shown the photo lineup with Kimble's picture, Wilhite said he was convinced Kimble was the robber. Wilhite never failed on a prior occasion to identify Kimble and only a few days had elapsed between the time of the robbery and when Wilhite selected Kimble from the lineup. Thus, Wilhite's identification and the circumstances surrounding it were reliable. Based on this evidence, we cannot say the trial court was clearly erroneous in rejecting Kimble's suppression motion.

Kimble next challenges the trial court's denial of his motion for mistrial which he made due to a statement from one of the State's witnesses concerning Kimble's prior imprisonment.

Stacy Robinson testified that, as a neighbor of Kimble's girlfriend, Katherine Lupinek, she had had a conversation with the couple in her home. When questioned by the State about the subject of that conversation, Robinson began, ". . . he told me that he had gotten out of prison about a year and a half ago. . . ." Kimble immediately objected arguing that the State was intentionally attempting to elicit testimony about prior convictions, and that a mistrial was in order because the jury had been tainted by the testimony. The State responded that it was not trying to elicit testimony regarding Kimble's prior conviction, but, rather, was trying to get to the essence of the conversation between Robinson and Kimble, which would show that Kimble tried to buy a gun from Robinson, but she declined because Kimble said that he had just gotten out of prison. Also, the State revealed that Robinson's entire statement, including her reference to Kimble's prior prison record, had been disclosed during discovery proceedings. The court denied Kimble's request for relief.

■■ Any reference to a defendant's prior conviction during the guilt phase of a criminal trial results in some prejudice to the defendant. *Heard v. State*, 322 Ark. 553, 560, 910 S.W.2d 663 (1995). Declaring a mistrial, however, is a drastic remedy and proper only where the error is beyond repair and cannot be corrected by any curative relief. *Id.*; *see also Furlough v. State*, 314 Ark. 146, 150, 861 S.W.2d 297 (1993). Here, although some prejudice resulted from Robinson's testimony, it was not so injurious as to

warrant a mistrial, especially in light of the fact that no further testimony was elicited regarding Kimble's prison stay. The trial court is in a better position to determine the effect of the remark on the jury and here the court concluded the reference was insufficient to warrant a mistrial. *Heard*, 322 Ark. 553, 560, 910 S.W.2d 663, 667.

Furthermore, an admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Id.* This court has concluded that an admonition is sufficient to cure a reference a witness made to a defendant's "previous record." *Id.* Here, such an admonition would have been sufficient to cure any prejudice in the instant case, but Kimble never requested one. It was clearly Kimble's obligation to ask for a curative instruction, and the failure to do so will not inure to his benefit on appeal. *See Vick v. State*, 314 Ark. 618, 863 S.W.2d 820 (1993).

As for Kimble's final argument, he persists that it was error for the trial court to allow testimony concerning evidence seized during an alleged illegal warrantless search of a motel room rented to his girlfriend Lupinek.

The testimony regarding the warrantless search and the items seized were as follows. Upon information that a suspect fitting the perpetrator's description was accompanying a guest at a local motel, Deputy May, along with his Captain and Investigator Butch Godwin, entered the motel room without a warrant with the permission of the motel's manager. Once inside, the officers noticed the room key on the nightstand. The continuation of the search revealed a bloody towel, and, in the wastebasket, an envelope with Lupinek's address on it. Further information uncovered at the address on the envelope led to a second residence, where the nickname and possible whereabouts of Kimble were discovered. Kimble and Lupinek were then traced to Kimble's parents' home in Florida, where the two were arrested and waived extradition to Arkansas.

As a preliminary matter, the State asserts that the argument is not preserved for our review, because Kimble failed to file a motion to suppress the evidence at least ten days in advance of the trial date, as is mandated by A.R.Cr.P. 16.2(b). Rule 16.2

does not mandate the denial of every motion which is untimely, and in the absence of a timely objection by the State during trial, we cannot conclude that the motion to suppress was not properly before the trial court or that the trial court's ruling on it was not properly preserved for review. *See Butler v. State*, 309 Ark. 211, 214, 829 S.W.2d 412 (1992).

In reaching the merits of Kimble's argument, we nevertheless hold that Kimble lacks standing to object to the search on Fourth Amendment grounds. The registration card adduced at trial showed Lupinek had rented the motel room. The card showed that two people were to occupy the room, but nowhere was Kimble's name shown. The manager of the motel testified that, sometime between 5:00 p.m. and 7:00 p.m., Lupinek filled out the registration card, paid $40.00 in cash, and later that evening the couple left the motel together in Lupinek's car.

In *Rockett v. State*, 318 Ark. 83, 883 S.W.2d 478 (1994) (*Rockett I*), we acknowledged that one registered at a motel as a guest is protected against unreasonable searches and seizures. *See Stoner v. California*, 376 U.S. 483 (1964). However, in the companion case to *Rockett I, Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995) (*Rockett II*), we further concluded that Rockett's accomplice, Nooner, had never proved an expectation of privacy in the motel room in question, because the room had been registered only in Rockett's name, and because Nooner had failed to present any evidence that he spent anything other than a brief period of time in the room.

It is clear that a proponent of a motion to suppress has the burden of establishing that Fourth Amendment rights have been violated. *See Rakas v. Illinois*, 439 U.S.128 (1978). Those rights are personal in nature. *Id.; Rockett II, supra.* In the present case, as in *Rockett II*, more was needed to establish a privacy interest in the room. Kimble has failed to present sufficient proof to support his standing to raise the issue of an unreasonable search and seizure. In sum, the trial court properly allowed the testimony concerning the seized items.

Affirmed.