2011 Ark. 432

**Roderick WILLIAMS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–364.**

Supreme Court of Arkansas.

Oct. 13, 2011.

Joseph Paul Mazzanti, III, Lake Village, for appellant.

Dustin McDaniel, Att'y Gen., by: Karen Virginia Wallace, Ass't Att'y Gen., for appellee.

COURTNEY HUDSON HENRY, Justice.

Appellant Roderick Williams appeals an order of the Desha County Circuit Court convicting him of capital murder, first-degree domestic battering, endangering the welfare of a minor, and possession of a firearm by a felon. For those convictions, appellant was sentenced to a term of life imprisonment without parole plus a term of seventy-two years. For reversal, appellant argues that the circuit court erred in denying his motions for directed verdict on the capital-murder and child-endangerment charges and by denying his motion for mistrial. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2011), as the jury imposed a sentence of life imprisonment. We affirm.

Appellant had a turbulent relationship with Kerman Harris, who testified that appellant was the father of her nine-month-old daughter. The couple ended their relationship, and Harris filed an order of protection against him. Nevertheless, on the afternoon of April 26, 2007, appellant attempted to contact Harris at her cousin's residence in McGehee when appellant approached the home and demanded entry. Harris called 911 for police assistance, but appellant left the premises before the police arrived.

At approximately 10:30 that evening, appellant went to Harris's home where she lived with her baby and her parents. Harris's mother, Clara Cobb, came onto the front porch to speak to appellant while Harris was on the phone inside the home. After her phone conversation, Harris, while holding the baby, went toward the porch to see who was there. At that time, she saw appellant loading a shotgun while talking to Cobb. Cobb threw up her hands, and appellant shot her in the stomach. Harris stood within a foot of her mother behind a screen door. Still armed, appellant took Harris and her baby, dragging Harris by her hair to a car where his uncle, Alonzo Williams, was waiting. Appellant drove away with Harris and the baby. During the car ride, appellant hit Harris, and she and Williams attempted to shield the baby from appellant's blows. Appellant pulled over and left his uncle and the baby on the side of the road. Appellant then forced Harris to remain with him. After getting the car stuck, appellant and Harris caught a ride to a trailer where they stayed until a SWAT team apprehended him the following day. As a result of appellant's beating, Harris suffered a broken arm and wrist and injuries to her face.

Police discovered three unspent shotgun shells on the porch near Cobb's body. A medical examiner performed an autopsy and stated that Cobb suffered a gunshot wound to the upper part of her stomach.

The examiner found shotgun shell pellets and a shot cup inside Cobb's body. Based upon these findings, the examiner confirmed that Cobb was shot at close range. Police officers found the broken shotgun and a spent shell near a bridge in close proximity to the Cobb house where appellant stopped to leave his uncle and baby.

Appellant was subsequently tried by a jury and was convicted of capital murder, kidnapping, first-degree domestic battering, endangering the welfare of a minor, and being a felon in possession of a firearm. For those convictions, appellant received a sentence of life imprisonment plus seventy-two years. Appellant appealed to our court, and we reversed and remanded in *Williams v. State*, 2010 Ark. 89, 377 S.W.3d 168, holding that the circuit court abused its discretion in denying appellant's motion for mistrial because the State received the benefit of prejudicial testimony regarding an alleged prior conviction.

Upon remand, prior to trial, the State and defense counsel agreed to an order prohibiting the officers of the court or the witnesses from using the word, "trial," to prevent the jurors from learning that the case had already been tried. During Harris's testimony, she alluded to "the last trial." Appellant moved for mistrial, which the circuit court denied. After deliberations, the jury convicted appellant of capital murder, first-degree domestic battering, endangering the welfare of a minor, and being a felon in possession of a firearm. Appellant again received a sentence of life imprisonment without parole plus a term of seventy-two years. The circuit court entered an order reflecting the jury's conviction and sentence. From this order, appellant brings his appeal.

On appeal, appellant argues that the circuit court erred in denying his motions for directed verdict for the offenses of capital murder and endangering the welfare of a minor. Although appellant raises his challenges to the sufficiency of the evidence in his first and third points, double-jeopardy concerns require that this court review these arguments first. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147.

We have held that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Arnett v. State*, 353 Ark. 165, 122 S.W.3d 484 (2003). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We have held that the credibility of witnesses is a matter for the jury's consideration. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008).

With regard to the capital-murder conviction, appellant argues that the State provided insufficient evidence that appellant acted with premeditation and deliberation to commit the murder. Appellant admits to shooting and killing the victim, but he maintains that he did not do so with

premeditation and deliberation.[1]

 ⎧A defendant commits capital murder, if, with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person. Ark. Code Ann. § 5–10–101(a)(4) (Supp. 2011). Premeditated and deliberated murder occurs when the killer's conscious object is to cause death, and he forms that intention before he acts and as a result of a weighing of the consequences of his course of conduct. *Evans v. State,* 2011 Ark. 33, 378 S.W.3d 82. Premeditation is not required to exist for a particular length of time. *Carmichael v. State,* 340 Ark. 598, 12 S.W.3d 225 (2000). It may be formed in an instant and is rarely capable of proof by direct evidence but must usually be inferred from the circumstances of the crime. *Pearcy v. State,* 2010 Ark. 454, 375 S.W.3d 622. Similarly, premeditation and deliberation may be inferred from the type and character of the weapon, the manner in which the weapon was used, the nature, extent, and location of the wounds, and the accused's conduct. *Robinson v. State,* 363 Ark. 432, 214 S.W.3d 840 (2005).

 Here, Harris testified that she had filed an order of protection against appellant for harassing her; however, appellant appeared at her cousin's house and left after she called 911. Later that night, Harris heard her mother talking to someone on the porch, and when she got off the phone, she went to the door and saw appellant loading a shotgun. Harris stated that she saw her mother throw up her hands as if to say, "I give up," and she witnessed appellant shoot her mother with the shotgun at close range. According to Harris, she stood near her mother on the inside of a screen door, about one foot away, while she held her child in her ⎣₆arms.

Dr. Daniel J. Konzleman, an associate medical examiner at the Arkansas State Crime Laboratory, testified about the nature, extent, and location of Cobb's wounds. The doctor testified that he performed the autopsy on the victim and discovered that she suffered a shotgun wound to her abdomen. Dr. Konzleman further testified that a shot cup will enter a wound if the shot is fired within approximately eight feet. He stated that he recovered small birdshot-type pellets and a shot cup from the victim's body. Based upon his findings, Dr. Konzleman estimated that the shooting could have taken place within a range of one to two feet.

Appellant testified on his behalf. According to appellant, he was intoxicated as he approached the Cobb residence carrying a shotgun and laid the shotgun down. Appellant testified that Cobb saw the gun and grabbed it. Appellant stated that he took the gun from her and that it "went off." Appellant testified that he told Harris it was an accident. However, we have often stated that the jury weighs the credibility of the witnesses and resolves any conflicts or inconsistencies in the evidence. *Matthews v. State,* 2011 Ark. 397, 2011 WL 4492237. Thus, when confronted with the inconsistencies between Harris's and appellant's testimony, the jury believed Harris and found that appellant acted with

---

1. We note that the jury was instructed on two alternate theories of capital murder: capital-felony murder involving kidnapping and capital murder committed by premeditation and deliberation. On appeal, both parties argued the sufficiency of the evidence under these theories. However, in *Williams v. State,* 2011 Ark. 389, 2011 WL 4492556, after ordering appellant to include the jury-verdict forms in a supplemental addendum and record, we discovered that the jury convicted appellant on the second theory that appellant caused Cobb's death with premeditated and deliberated purpose. For that reason, we will only address the sufficiency of the evidence supporting that charge.

premeditation and deliberation by taking the shotgun to the house, walking to the porch, loading the gun, and firing at the victim after she threw her hands in surrender. Based upon our standard of review, we hold that substantial evidence supports appellant's conviction of capital murder with premeditation and deliberation.

With regard to the child-endangerment conviction, appellant argues that the circuit court erred in denying his motion for directed verdict because the evidence showed that appellant simply left the child on the side of the road with another family member and that the child was not harmed in any manner.

Arkansas Code Annotated section 5–27–205 (Repl.2006) provides in pertinent part:

(a) A person commits the offense of endangering the welfare of a minor in the first degree if, being a parent, guardian, person legally charged with care or custody of a minor, or a person charged with supervision of a minor, he or she purposely:

(1) Engages in conduct creating a substantial risk of death or serious physical injury to a minor[.]

Here, the testimony revealed that appellant fired a shotgun at the child's grandmother as Harris and the child stood approximately one foot away from the victim behind a screen door on the front porch. According to Harris's testimony, appellant dragged her by the hair to the car while she held the infant. He then beat Harris in the car while she and Williams tried to shield the baby from appellant's blows. Harris also testified that appellant knocked Williams unconscious and left him with the baby in the dark on the side of the road. Harris stated that the baby wore only a onesie in what Officer Jonathan Byrd described as "long-sleeve weather." According to Williams, who testified for the defense, appellant left the baby with him when he felt lightheaded and slumped over. Williams denied that appellant struck him; however, on cross-examination, he admitted that it "felt like a blow to my back." Thus, based upon this testimony, we conclude that appellant engaged in behavior that created a substantial risk of death or serious injury to his minor child. For these reasons, we hold that substantial evidence supports appellant's child-endangerment conviction.

For the final point on appeal, appellant argues that the circuit court erred in denying appellant's motion for mistrial when the State's witness referred to appellant's previous trial during her testimony. In response, the State contends initially that appellant's argument is barred by the doctrine of invited error. The State also asserts that appellant failed to request an admonition when the circuit court denied appellant's mistrial motion.

A mistrial is an extreme and drastic remedy when an error has been made that is so prejudicial that justice cannot be served by continuing the trial. *King v. State,* 361 Ark. 402, 206 S.W.3d 883 (2005). We have observed that a limiting instruction or admonishment by the court may serve to remove the prejudicial effect of evidence. *Kilpatrick v. State,* 322 Ark. 728, 912 S.W.2d 917 (1995). Indeed, we have held that an admonition will usually remove the effect of a prejudicial statement unless the statement is so patently inflammatory that justice could not be served by continuing the trial. *Kimble v. State,* 331 Ark. 155, 959 S.W.2d 43 (1998). A party objecting to the testimony bears the burden of requesting an admonition sufficient to cure the prejudice. *Id.* The failure of the defense to request an admonition may negate the mistrial motion. *Barnes v. State,* 346 Ark. 91, 55 S.W.3d 271 (2001). The decision to deny a

mistrial is within the sound discretion of the trial court, and its ruling will not be reversed in the absence of an abuse or manifest prejudice to the defendant. *Hamilton v. State,* 348 Ark. 532, 74 S.W.3d 615 (2002).

 In the present case, during Harris's cross-examination, defense counsel asked Harris a series of questions about whether she recalled a time riding with appellant, who was pulled over by Officer Edgerson of the Dumas Police Department. Harris replied, "No, I don't." Defense counsel responded, "Do you think he made that up?" The prosecutor objected on the grounds of speculation. Defense counsel responded that she was attempting to impeach the witness. The following colloquy then occurred:

> DEFENSE COUNSEL: You know there's an individual, Officer Edgerson out of Dumas, that's going to testify that after January 2007 he pulled you and Mr. Roderick Williams over, right?
>
> HARRIS: I remember him from the last trial.
>
> DEFENSE COUNSEL: Your Honor, may we approach?

At that time, the circuit court held a bench conference during which defense counsel moved for a mistrial on the basis that Harris referred to appellant's prior trial and tainted the jury. The prosecution argued that defense counsel "pushed" Harris into her statement. After the parties presented argument to the court, the court noticed it was 4:15 p.m., recessed, and asked the jury to return the following day. After hearing extensive argument from the parties, defense counsel stated, "Your Honor, you can consider [a mistrial]. If you think you can rehabilitate the jury, think about it, that's fine." The circuit court held its ruling in abeyance until the next morning. The following morning, the court stated in part:

THE COURT: Good morning. I need to address my motion [for mistrial] that's under advisement. After due consideration, the court's of the opinion that the gravamen of the issue does not rise to that of a mistrial. Specifically the court acknowledges the existence of an order in limine that a particular word, "trial," is not to be mentioned during the course of this trial, in as much as this is a retrial.

Secondly, the court recognizes that the witness was on cross-examination and was strenuously being and zealously being cross-examined by defense counsel over, you know, repeated objections by the State. But it was cross-examination and under those circumstances, whereas the court does not find that counsel invited the response, but things like this do happen under those circumstances.

The court does not, is just not of the opinion that that sentence that concluded with the word "trial" is of significant, drastic enough to warrant a mistrial. And for that reason, I'll deny the motion for mistrial.

. . . .

I'm going to continue to admonish the lawyers to admonish their clients or their witnesses not to use the word "trial."

. . . .

THE COURT: Okay. I'm not of the opinion that that's—A lot of times you bring things like that to the attention of the jury.

DEFENSE COUNSEL: Sure. Sure.

THE COURT: I'm amenable to a suggestion from—

DEFENSE COUNSEL: I agree. I think maybe just leave it be and not bring the attention to the jury.

THE COURT: That's my sense of it.

As evidenced by the foregoing colloquy, appellant moved for a mistrial but declined any admonition to the jury, agreeing with the circuit court that Harris's comment about a previous trial should not be called to the attention of the jury. We have stated that the circuit court is in a better position to determine the effect of the remark on the jury. *Kimble, supra.* In this specific instance, Harris's comment was a brief and unsolicited remark that was not repeated. Therefore, we do not believe that Harris's statement was so patently inflammatory that it would cause the drastic relief of granting a mistrial. For these reasons, we hold that the circuit court did not abuse its discretion in denying appellant's request for a mistrial.[2]

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2011), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial errors have been found.

Affirmed.

**2.** In its brief, the State contends that appellant's argument is barred by the doctrine of invited error. Because we dispose of appellant's argument on a different basis, we decline to address this specific argument.