2012 Ark. 179

**Raymond David LEACH III, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–932.**

Supreme Court of Arkansas.

April 26, 2012.

Randy Rainwater, Attorney at Law, Mena, for appellant.

Dustin McDaniel, Attorney General, Karen Virginia Wallace, Assistant Attorney General, for appellee.

JIM GUNTER, Justice.

Appellant, Raymond David Leach III, was convicted of capital murder and sentenced to life in prison without parole. On appeal, he claims five points warrant re-versal of his conviction: that the circuit court erred in not allowing appellant to cross-examine Tyler Prine regarding threats he allegedly made to another witness; that the circuit court erred in denying appellant's motion for directed verdict on capital murder; that the circuit court erred in denying appellant's motion to suppress his statement; that the circuit court erred in allowing inadmissible evidence; and that the circuit court erred in allowing a law-enforcement officer to give his opinion. Because appellant was sentenced to life in prison without parole, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2). We affirm.

On July 17, 2009, at approximately 3:00 a.m., Officer Bo Hayes with the Polk County Sheriff's Department responded to an emergency call of a possible murder at an intersection in Cove, Arkansas. Upon arriving, he discovered four people, including appellant, gathered near a pick-up truck. Christopher Casey, who had been stabbed in the neck, face, and chest, was found in the driver's seat of the pick-up truck. The other three people present— Tammy Shepard,[1] Jack Shepard, and Tyler Prine—all indicated to Officer Hayes that appellant had stabbed Casey. Appellant was placed under arrest and later charged with premeditated and deliberate capital murder.

Appellant's jury trial was held in Polk County Circuit Court in June 2011 where the following evidence was presented. Jack Shepard testified that when he left his home between 2:30 and 2:45 a.m. to go to work on July 17, 2009, he noticed Tyler Prine's truck blocking the road. Prine was Shepard's cousin by marriage and lived nearby. When Shepard stopped, he saw Prine and a "skinny dude" whom he identified in court as appellant; both were

_____

1. In the record, Tammy Shepard is referred to by some witnesses as Amanda Shepard.

drunk; and appellant appeared agitated, walking in circles and throwing his hands in the air. Shepard testified that he saw appellant toss something into the back of the truck. Prine then walked over to Shepard and said that appellant had just stabbed and killed the driver of the truck. Shepard exited his truck to go check on the driver. Shepard stated that he heard appellant repeatedly say that he had stabbed the driver because Prine wanted appellant to do so and that he and Prine needed to take the truck and get rid of the body. After Shepard found the driver slumped over the steering wheel and bleeding profusely, he returned to his house to retrieve his wife, Tammy Shepard, who was a nurse, and to call 911.

Tyler Prine testified that after work on July 16, 2009, he went to a party where he drank alcohol and smoked marijuana. He stated that appellant was there and was "pretty drunk." Prine testified that he left the party with appellant and Casey to go to Kevin Burkett's house, was unsure how long they stayed, but remembered passing out in his truck and asking appellant and Casey to take him home. With Prine in the middle of the truck, Casey drove, and appellant was seated by the passenger door. Prine said that when they were near his house, appellant jumped over Prine and began punching Casey. When Prine attempted to grab appellant, Prine realized that appellant had a knife. Prine and appellant jumped out of the truck. Appellant asked what he ought to do with the knife, and Prine said to put it in the tool box. Prine testified that he asked appellant why he had stabbed Casey and that appellant said that he thought Prine wanted him to do so. Prine denied asking appellant to kill Casey. After Shepard came back with his wife, they all waited for the police to arrive. Prine stated that he told the police the knife was in the tool box.

Buck Bailey of the Polk County Sheriff's Office testified that he transported appellant, who was "very intoxicated," to the jail but that despite appellant's intoxication, he followed orders. Special Agent Gordon Diffee with the Arkansas State Police testified that he collected evidence from the crime scene, including a butterfly knife with a six-inch blade found in the truck's tool box, and that he took photographs of the scene and appellant. During Agent Diffee's interview with appellant, he claimed that he had been drinking heavily and taking prescription drugs on the evening of July 16, 2009; that he did not remember getting in the truck with Prine and Casey; that he did not remember stabbing Casey; and that he did not kill anyone. He also admitted that he owned several knives, including a butterfly knife with a six-inch blade. Dr. Paul DeYoub, who performed a court-ordered psychological examination of appellant, testified that appellant admitted that he owned the knife that Agent Diffee had recovered from the crime scene.

The State also presented the testimony of Joshua Kyle, who testified that he saw appellant at a party on the evening of July 16, that appellant was "extremely intoxicated," and that he "talked all night about killing somebody." Kyle stated that appellant was talking like he could "whop [sic] anybody's butt and no one [could] stop him."

Forensic experts testified that there was blood on the knife found in the tool box of Prine's truck and on the pants appellant was wearing when he was arrested. DNA tests matched the blood on those items to Casey within all scientific certainty. The medical examiner testified that Casey died from multiple stab wounds, including a nonsurvivable stab wound to the chest that perforated his heart. The medical examin-

er stated that the wounds could have been made with the knife found in the tool box.

The jury returned a verdict of guilty on capital murder, and the court sentenced appellant to life in prison. The judgment and commitment order was filed on June 22, 2011, and appellant filed a timely notice of appeal the following day.

## I. *Denial of Directed Verdict*

Appellant argues that the circuit court erred in denying his motion for directed verdict on capital murder because the State failed to prove beyond a reasonable doubt that appellant acted with the premeditated and deliberate purpose to cause death and that he caused Casey's death. He asserts that the evidence established that appellant was intoxicated at the time of the |₅offense, that he could not form the requisite mental state, and that there was no evidence to support a finding of premeditation or causation.

■ We have held that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Arnett v. State,* 353 Ark. 165, 122 S.W.3d 484 (2003). Although appellant raises his challenge to the sufficiency of the evidence in his second point on appeal, double-jeopardy concerns require that this court review sufficiency arguments first. *Williams v. State,* 2011 Ark. 432, 385 S.W.3d 157. The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* Moreover, we have held that the credibility of witnesses is a matter for the jury's consideration. *Id.* Where the testimony is

conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Id.*

■ A defendant commits capital murder, if, with the premeditated and deliberate purpose of causing the death of another person, he causes the death of any person. Ark.Code Ann. § 5–10–101(a)(4) (Supp.2011). Premeditated and deliberate murder occurs when the killer's conscious object is to cause death, and he forms that intention before he acts and as a result of a weighing of the consequences of his course of conduct. *Evans v. State,* 2011 Ark. 33, 378 |₆S.W.3d 82. Premeditation is not required to exist for a particular length of time. *Carmichael v. State,* 340 Ark. 598, 12 S.W.3d 225 (2000). It may be formed in an instant and is rarely capable of proof by direct evidence but must usually be inferred from the circumstances of the crime. *Pearcy v. State,* 2010 Ark. 454, 375 S.W.3d 622. Similarly, premeditation and deliberation may be inferred from the type and character of the weapon, the manner in which the weapon was used, the nature, extent, and location of the wounds, and the accused's conduct. *Robinson v. State,* 363 Ark. 432, 214 S.W.3d 840 (2005).

■■ We are convinced that there was sufficient evidence from which a jury could conclude, without speculation or conjecture, that appellant acted with the premeditated and deliberate purpose to cause the death of Christopher Casey and that he did in fact cause Casey's death. Considering only the evidence that supports the verdict, the State established that prior to Casey's death, appellant bragged to Josh-

ua Kyle that he was going to kill someone. Several hours later, Tyler Prine was in the cab of the truck sitting between appellant and Casey when appellant began stabbing Casey repeatedly with a knife. Prine and Shepard, who had stopped to help, both heard appellant admit that he had stabbed Casey and saw appellant toss the knife into the back of the truck. Moreover, Shepard heard appellant tell Prine that they needed to take the truck and get rid of the body. The knife was recovered from the truck, and blood on the knife conclusively matched Casey. Thereafter, appellant identified the recovered knife as his own. Medical testimony established that Casey died as a result of multiple stab wounds, which were consistent with the knife that was recovered from the truck. The jury could conclude, based on Prine's and Shepard's testimony, as well as inferences based on appellant's conduct, that it was appellant's conscious object to cause Casey's death. Furthermore, relying on the medical and forensic testimony, the jury could have resolved that the stab wounds inflicted by appellant caused Casey's death. Although there was testimony that appellant was intoxicated on the night of the murder, voluntary intoxication is not an affirmative defense in criminal prosecutions. *See White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986). As such, it was up to the jury to weigh the evidence presented, and we are satisfied that there was sufficient evidence by which the jury could determine that appellant acted with the premeditated and deliberate purpose to cause Casey's death and caused his death.

## II. *Rule 608*

Appellant contends that the circuit court erred by not allowing him to question Prine about a specific act for the purpose of attacking his credibility pursuant to Ark. R. Evid. 608(b). During the de-

fense's cross-examination of Prine, the following occurred:

DEFENSE COUNSEL: You spoke of Adam, Adam Kyle. You said you knew Adam went to the party.

PRINE: Yes.

DEFENSE COUNSEL: And, you know who Adam is, right?

PRINE: Yes.

DEFENSE COUNSEL: Have you recently talked to Adam?

PRINE: Huh?

DEFENSE COUNSEL: Have you talked to Adam lately?

PROSECUTOR: Judge, objection, Your Honor, approach.

DEFENSE COUNSEL: The words aren't out of my mouth, Your Honor.

COURT: Well, I get to hear the objection.

PROSECUTOR: If we're going into impeachment by evidence of character or in conduct of witness, this is extrinsic. It's not allowed under Rule 608.

. . . .

DEFENSE COUNSEL: Okay, the objection was that it was extrinsic evidence, is that correct?

PROSECUTOR: Under 608.

DEFENSE COUNSEL: Well, in 608(b) is what I was about to ask him of a specific incident of conduct those [sic] concerning his character for truthfulness or untruthfulness or concerning the character of truthfulness or untruthfulness of another witness to which character the witness being cross-examined has testified. He hasn't said anything yet, but I'm asking him did you say this and I believe that I have the right to do that and he can say yes or no.

PROSECUTOR: I'm sorry, this has nothing to do with his character, Your Honor. They can go into character for truthfulness or untruthfulness, that's it.

DEFENSE COUNSEL: Your Honor, I have to ask the question first to be able to get him to say yes or no before I can declare it truthful or untruthful.

COURT: Well, but it's going to be a question of what sort of question do you ask.

PROSECUTOR: But, it does have to go to his character for truthfulness or untruthfulness and I don't think it's going to.

COURT: On cross, okay, you have to be careful in getting into specific evidence of conduct, all right, that deals with anything other than truthfulness, veracity. Once that has been attacked, then you can follow up on it, but the question is—you were about to ask him if he had threatened Mr. Kyle, but we've got to get to there, first some other way.

. . . .

DEFENSE COUNSEL: Your Honor, I understand that, but I don't know how it gets any more untruthful than this. He's intimidating witnesses that are trying to come in here and tell the truth.

COURT: Well, does that have anything to do with his truthfulness or untruthfulness? Once you have—once you have established that or presented something to that effect, then it can come in, but at this stage, we don't have that on the record anywhere. So, you can always bring another witness who says something about that and then you can go back to recalling him and talking about specific instances, but you can't just up front do something on specific instances of conduct.

PROSECUTOR: I don't think—I don't think you can bring an extrinsic witness in here on it at all.

COURT: Well, you may be able to cone [sic] it has been attacked, but we've got to get something somewhere that attacks his credibility or his stand as the truthfulness and untruthfulness.

DEFENSE COUNSEL: Okay.

COURT: Specific acts of bad conduct in and of themselves can't be admitted. So, let's just kind of move through that and so [sic] somewhere else.

The State posits that this court need not reach the merits of appellant's Rule 608 assertion because appellant failed to make a proffer to preserve the issue for appeal. We have held that when challenging the exclusion of evidence, a party must make a proffer of the excluded evidence at trial so that this court can review the decision, unless the substance of the evidence is apparent from the context. *Brown v. State*, 368 Ark. 344, 246 S.W.3d 414 (2007); *see also* Ark. R. Evid. 103 (2011).

In *Halford v. State*, the defendant maintained that the trial court erred in not allowing him to cross-examine a State witness regarding possible bias. 342 Ark. 80, 27 S.W.3d 346 (2000). The witness's husband was in jail and her brother was wanted on a warrant. The defendant wanted to ask her if she was hiding her brother and told the court

Your Honor, her husband was in jail, her brother had outstanding warrants for him. I am going to ask her if it isn't true that she was hiding her brother out to keep her brother from getting arrested and ask her if that had an influence on her statement to [the police].

*Id.* at 86–87, 27 S.W.3d at 350. The trial court denied the line of questioning. We held,

What is critical to our determination of this point is that defense counsel failed to go forward and make any proffer of what Ms. Payne's testimony would have been. He only advised the trial court that he wanted to pose certain questions to her. Hence, we can only speculate about Ms. Payne's answers relating to

bias and any resulting prejudice. Accordingly, this point is not preserved for our review.

*Id.,* 27 S.W.3d at 350 (internal citations omitted).

Based on this court's precedent in *Halford,* appellant did not properly preserve his argument regarding exclusion of evidence where he did not proffer what Prine's testimony would have been. This is not a case where the substance of evidence is clear from the context of the questions being asked because appellant's counsel never asked a question relating to the alleged threats—all counsel asked was whether Prine knew the other witness and had talked to him recently. This court would have to speculate, based on those basic introductory questions, what the evidence appellant sought to introduce was. From the discussion at the bench, it appears that the court and both parties knew appellant wanted to question Prine about threatening a witness; however, to properly preserve the issue, appellant needed to be more specific on the record about what he wanted to ask Prine and what he believed the responses to those questions would be so this court could conduct a proper review.

### III. *Suppression*

For his third point on appeal, appellant maintains that the circuit court erred in denying his motion to suppress his statement given to Agent Diffee, which was played in its entirety for the jury. First, appellant asserts that his custodial statement was not freely and voluntarily made as required by the Due Process Clause and that he lacked a basic understanding of his rights. Second, he maintains that because Diffee elicited statements from appellant prior to reading him his *Miranda* rights, which appellant maintains constituted an illegal interrogation, the entire interview should have been suppressed based on the doctrine of fruit of the poisonous tree.

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily and was knowingly and intelligently made. *Flowers v. State,* 362 Ark. 193, 208 S.W.3d 113 (2005). In order to determine whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.* In order to make this determination, this court reviews the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Id.* The fact that the defendant is not a stranger to the criminal-justice system is a factor to be considered in determining whether a custodial statement was voluntarily made. *Sweet v. State,* 2011 Ark. 20, 370 S.W.3d 510. This court will reverse a circuit court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id.*

The evaluation of the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the trial judge to determine, and this court defers to the position of the trial judge in matters of credibility. *Shields v. State,* 357 Ark. 283, 166 S.W.3d 28 (2004). Conflicts in the testimony are for the trial judge to resolve, and the judge is not required to believe the testi-

mony of any witness, especially that of the accused, since he or she is the person most interested in the outcome of the proceedings. *Winston v. State*, 355 Ark. 11, 131 S.W.3d 333 (2003). So long as there is no evidence of coercion, a statement made voluntarily may be admissible against the accused. *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002).

Here, Agent Diffee testified at the suppression hearing that appellant appeared intoxicated when he was arrested shortly after the murder and that Diffee chose to wait more than twenty-four hours to conduct the interview so that appellant would have time to be sober. Diffee stated that when he interviewed appellant, he appeared to be alert and to understand the questions he was asked. The State introduced evidence that appellant had prior experience with the criminal-justice system and that he was thirty-seven years old at the time of the interview. Prior to finding that appellant was capable of answering questions and understood his rights, the circuit court reviewed appellant's waiver by watching the videotaped interview. As explained above, it was the circuit court's obligation to weigh the credibility of Agent Diffee and to resolve any conflict in the testimony. In reviewing the record before us, we hold that the circuit court's decision that appellant's statement was freely and voluntarily given was not clearly against the preponderance of the evidence.

Appellant also contends that his statement should have been suppressed pursuant to the fruit-of-the-poisonous-tree doctrine because appellant answered questions while in custody prior to being read his *Miranda* rights; however, appellant never made this argument to the circuit court and we decline to address it on appeal.[2] It is well settled that an appellant must raise and make an argument at trial in order to preserve it for appeal; this is true even when the issue raised is constitutional in nature. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007).

## IV. *Rule 404(b) & Relevancy*

Next, appellant argues that the circuit court erred in allowing the portion of appellant's custodial statement to be played for the jury in which appellant references another person calling him a child molester and trying to get his children taken away. Appellant maintains that allowing that portion of the statement violated Arkansas Rule of Evidence 404(b) and was irrelevant pursuant to Arkansas Rule of Evidence 402. These arguments are not preserved for our review.

In his videotaped statement, appellant was asked by Agent Diffee if Christopher Casey was involved in an altercation appellant and Prine had with a third party. Appellant responded to the question:

> Not that I can recall. I hadn't been to Kevin's house. I stay away from Kevin's house because Kevin don't like me anymore and he's the reason me and my ex-girlfriend broke up and I was trying to get back with my ex-girlfriend. So, no, I stay away from Kevin. I really don't like him. I don't like him a bit. Because he wanted to try to call me a child molester and tried to get my girls taken away from me.

Prior to trial, appellant filed a Motion to Disclose Rule 404(b) Material that made no reference to particular evidence but

---

**2.** Although appellant filed a pretrial motion in limine asking the court to redact the portion of the videotaped statement in which appellant answered questions prior to being Miran- dized, which the circuit court later denied, appellant never argued suppression of the statement based on the fruit-of-the-poisonous- tree doctrine.

asked that the State be required to disclose any Rule 404(b) evidence that it intended to use at trial. In a pretrial motion in limine, appellant asked the circuit court to rule as "off limits" the following:

Any reference to a DHS investigation, the underlying investigation, or reference to the identity of the reporter of any such matter. As to the reporter that information is specifically protected by statute. See A.C.A. § 12–12–1717 and A.C.A. § 12–18–910. A 404(b) Motion has been filed, no mention of prior bad acts that involves the Defendant. The statement given by Raymond Leach involves two (2) issues that should be redacted. Those two (2) issues involve investigation by DHS and a statement by Raymond Leach to claim he is "not a violent person."

At a pretrial hearing on the motion in limine, appellant's counsel made the following argument:

Which brings me to the second part of that is there is the statement that is given by Mr. Leach. There are two issues that he is questioned on and one is in regards to the DHS and second statement that he makes that says I'm not a violent person. Neither one of those need to be played to the jury as it will open the door for rebuttal. We're asking that those be allowed to be redacted from the interview.... Because then he said specifically they called him a child molester. That part should be redacted because if that part is coming in, then we've got to explain the whole DHS thing because people are going to automatically be prejudiced by that portion of the tape without any further understanding. So, all we're asking is to be able to redact that portion of the tape.... Your Honor, he does state that he is angry about the DHS involvement because they called him a child molester.

That's very inflammatory with the jury not knowing the full facts because that's not going to open the door and I just believe the cat is out of the bag at that point. I mean, that's a very harmful statement and it has nothing to do with this case.

At trial, when the State played the videotaped statement, appellant's counsel objected and the following colloquy occurred:

DEFENSE COUNSEL: It's about the next sentence. There is nothing further on either about this. They talk about the DHS matter. They talk about the Kevin Burkett incident. All those things we've named, there is no other evidentiary purpose to have the rest of this tape introduced or shown to the jury at all.

COURT: I have fully examined this very closely and I still don't remember any discussion on any DHS in this matter. He makes some comment about somebody that had accused him of something.

DEFENSE COUNSEL: That's it.

COURT: Is that what you're talking about?

DEFENSE COUNSEL: Yes, that was the investigations. It had to do with Kevin Burkett in a separate incident that occurred and we asked for a ruling on that and you had ruled that that would be kept out of court.

PROSECUTOR: I don't think that was the ruling.

DEFENSE COUNSEL: That was the ruling.

COURT: One thing at a time. In my motion—in my ruling on the motion yesterday, I had said I had read through the entire transcript and I didn't see any part of it that couldn't come in because you all had raised specifically about a DHS allegation and there was no reference to that in here that I recall.

DEFENSE COUNSEL: It's the substance—I mean, could I show you the rest of the video?

COURT: In the transcript at some point there is some mention made of somebody trying to get him in trouble over something, that's all he said.

DEFENSE COUNSEL: He said they're trying to get me for being a child molester. This case has nothing to do with that.

. . . .

DEFENSE COUNSEL: If we try to defend against that then we open door [sic] for it. We can say nothing about it so we can't recover from them showing this video that has no evidentiary purpose to the hearing, I mean the case at hand.

Thereafter, the video was played in its entirety.

■■■■ While it is true that objections need not cite specific rules to be sufficient, this court has made clear that a specific objection is necessary in order to preserve an issue on appeal. *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000). To preserve an argument for appeal, there must be an objection in the trial court that is sufficient to apprise the court of the particular error alleged, and the appellate court will not address arguments raised for the first time on appeal. *Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996). A party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997).

■■■■ Here, the only reference to Rule 404(b) was in appellant's pretrial motion for the State to disclose such evidence prior to trial. Appellant's counsel never made a specific objection that the "child molester" reference was improper character evidence pursuant to Rule 404(b), and the court never ruled on the basis of Rule 404(b). Instead, appellant's counsel focused on the fact that not redacting the "child molester" statement would require appellant to "open the door" to the DHS investigation so that the jury was properly informed about that allegation. Without a specific objection and a ruling, that issue is not preserved for appeal and we need not address it. Moreover, appellant never made a specific relevancy objection. Rather, appellant urged that the portion of the statement including the comment had "nothing to do with this case" and "no evidentiary purpose." This court will not presume that these ambiguous statements preserve a specific relevancy objection, lest we presume such statements preserve all "evidentiary" objections. *See Vanesch v. State*, 343 Ark. 381, 37 S.W.3d 196 (2001) (holding that objection by defense counsel that he "did not see the relevance" of the evidence was not a proper relevancy objection).

## V. Officer Testimony

For his final point on appeal, appellant contends that the circuit court erred in allowing Agent Diffee to testify that when he took photographs of appellant at the crime scene, he had what appeared to be blood on his hand. Appellant claims that the agent's testimony was speculative and in violation of Arkansas Rule of Evidence 701.

■■■■ Trial courts have broad discretion in deciding evidentiary issues, and their decisions are not reversed absent an abuse of discretion. *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003). Moreover, this court will not reverse an evidentiary decision by the trial court in the absence of prejudice. *Marks v. State*, 375 Ark. 265, 289 S.W.3d 923 (2008).

■■■■ The fact that testimony may be an opinion does not of itself render it inadmis-

sible. *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994). Pursuant to Arkansas Rule of Evidence 602, a witness may only testify to a matter where there is sufficient evidence to show that the witness has personal knowledge of the matter. Further, personal knowledge can be proved through the testimony of the witness. Ark. R. Evid. 602. Additionally, Arkansas Rule of Evidence 701 provides that if a witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences that are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. We noted in *Marks* that

> [i]n *Carton v. Missouri Pacific Railroad Co.*, 303 Ark. 568, 798 S.W.2d 674 (1990), we set out a three-prong test for determining admissibility under Rule 701. First, the testimony must pass the "personal knowledge" test of Rule 602. *Id.* Second, it must be rationally based, that is, the opinion must be one that a normal person would form on the basis of the facts observed. *Id.* Finally, the opinion must meet the "helpful" test. *Id.*

375 Ark. at 270, 289 S.W.3d at 927.

In this instance, the circuit court allowed Agent Diffee to testify that it appeared to him, while photographing appellant at the scene shortly after the murder, that appellant had blood on his hand. This opinion was based on Agent Diffee's personal experience as a law-enforcement officer and observing appellant at this particular crime scene; it was rationally based on Diffee's observations at the crime scene; and it was helpful for him in explaining why he took photographs of appellant's hands and to determine a fact in issue. Under these circumstances, we conclude that the circuit court did not abuse its discretion in allowing Agent Diffee to testify regarding his personal observation.

## VI. *Rule 4–3(i) Review*

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2011), the record has been reviewed for all objections, motions, and requests made by either party that were decided adversely to appellant and no prejudicial error was found.

Affirmed.