Cite as 2026 Ark. 61

# SUPREME COURT OF ARKANSAS

**No.** CR–25–275

| | | |
|---|---|---|
| ELIJAH SINGLETON | | **Opinion Delivered** April 9, 2026 |
| | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. 18CR-22-904] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE RANDY PHILHOURS, JUDGE |
| | APPELLEE | <u>AFFIRMED</u>. |

**CODY HILAND, Associate Justice**

Elijah Singleton appeals from his Crittenden County Circuit Court convictions for first-degree murder and employing a firearm in the commission of the offense. On appeal, he argues the circuit court abused its discretion in denying his motion for a mistrial and erred in overruling his *Batson* challenges to the State's peremptory strikes during jury selection. His arguments are meritless. Therefore, we affirm.

## I. *Factual and Procedural Background*

Singleton and Ja'Keya Hampton dated for approximately two years until September 2022, when their romantic relationship began to decline. On October 7, the day before Hampton's murder, the two exchanged several messages on Facebook Messenger. Hampton did not use her cellphone for these communications because Singleton had stolen it from her and refused to return it. During the exchange, Singleton told Hampton he was near her house and would return her phone if she met him. Shortly after midnight on October 8, Hampton agreed to meet Singleton.

Approximately thirty minutes later, an officer with the West Memphis Police Department responded to the scene and found Hampton dead in her car from a gunshot wound to the back of her head not far from her house. Two different home-security cameras captured the shooting. Shortly after 1:05 a.m., Hampton's vehicle abruptly stopped in the middle of a residential street. A passenger in the front seat then fired three gunshots and fled on foot. On one recording, Hampton can be heard screaming "'Lijah!" immediately before the first shot was fired. After Hampton's murder, Singleton contacted several people on Facebook Messenger stating he was hiding in a shed, needed a room at the Budget Inn, needed money for a plane ticket, and needed to destroy evidence. Singleton became the prime suspect. He was arrested later that evening following a multihour standoff with the West Memphis and Crittenden County Special Response Teams at the Budget Inn in West Memphis. Singleton was subsequently charged with capital murder and a firearm enhancement.

On the first day of the trial, shortly after the circuit court delivered its opening directives to the jury pool and before jury selection began, prospective juror Louis Ray informed the circuit court, "I'm a lieutenant in the jail, and it's a conflict of interest." The circuit court responded in front of the jury pool that Ray's employment was "not necessarily a conflict of interest," but called Ray to the bench for further discussion outside the hearing of the jury pool. During the bench conference, Ray explained he personally knows Singleton. When the circuit court asked whether Ray's knowledge of Singleton would "cloud [his] judgment if [he] were to serve as a juror," Ray responded he had been "hands

2

on with [Singleton]," so his judgment could be clouded "a lot." The circuit court immediately excused Ray from service.

After jury selection of the first panel concluded, the State exercised peremptory strikes against Jade Jones and Dafney Jones. Following jury selection of the second panel, the State struck Theoplis Macnifcent and Mareus Willis. Singleton then raised a *Batson* challenge,[1] arguing the State had used its peremptory strikes only against black prospective jurors. The State offered race-neutral reasons for the strikes. In order, it explained that Jade Jones knows the victim's family; Dafney Jones "made it perfectly clear that she did not want to be here"; Theoplis Macnifcent appeared to be "going to sleep at times" and was not paying attention; and Mareus Willis took time answering questions and also appeared inattentive. The State added that Willis's inattentiveness raised concerns about his ability to pay attention during the trial. Singleton responded that other prospective jurors had asked the State to rephrase questions or expressed reluctance about serving, and inattentiveness was not a sufficient basis for striking jurors in a capital-murder case.

The circuit court noted it had observed Macnifcent with his eyes closed frequently and rubbing his forehead as if attempting to stay awake. Regarding Dafney Jones, the circuit court observed her body language was generally poor and appeared more detrimental to the State than to Singleton. The circuit court found no issue with the strike of Jade Jones but requested additional explanation regarding Willis. The State reiterated that Willis appeared inattentive during questioning and added that he seemed overly eager to sit on the jury.

---

[1]*See generally Batson v. Kentucky*, 476 U.S. 79 (1986).

The circuit court found the State's proffered reasons were "unequivocal" as to Jade Jones, Dafney Jones, and Theoplis Macnifcent but described the strike of Mareus Willis as a closer call. The circuit court noted the State had been directly facing Willis during jury selection and was able to observe him closely. The circuit court ultimately accepted the State's explanation and denied Singleton's *Batson* challenge. Singleton was ultimately convicted of the lesser-included offense of first-degree murder and employing a firearm in the commission of the offense. He was sentenced as a habitual offender to life imprisonment plus twenty-five years. Singleton now appeals.

## II. *Law & Analysis*

### A. Singleton's Motion for a Mistrial

For his first argument on appeal, Singleton contends the circuit court's curative statement did not sufficiently remedy the alleged prejudice created by Ray's comment and therefore compromised his Sixth Amendment right to an impartial jury and Fourteenth Amendment right to due process.[2] Specifically, Singleton argues that Ray's open-court statement revealed to the entire jury pool that he was incarcerated and thereby tainted their view of him as the accused. We disagree.

---

[2]U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* . . . .") (emphasis added); U.S. Const. amend. XIV, § 1 (Whereas no State shall "deprive any person of life, liberty, or property, *without due process of law*[.]") (emphasis added). Though Singleton attempts to couch his first argument on appeal as a constitutional one by way of the Sixth and Fourteenth Amendments to the United States Constitution, he does not do so with great persuasion or reliance upon any legal authority for his proposition; therefore, we decline to address it. *See Clevenger v. State*, 2025 Ark. 128, at 14, 719 S.W.3d 453, 464.

Circuit courts exercise broad discretion in ruling on a motion for a mistrial, and we will not reverse its decision absent an abuse of that discretion or manifest prejudice to the complainant. *Franklin v. State*, 2024 Ark. 9, at 4–5, 682 S.W.3d 1, 4. An abuse of discretion does not occur simply when a mistake has been made but when the circuit court "acts improvidently, thoughtlessly, or without due consideration." *Walker v. State*, 2025 Ark. 127, at 4, 719 S.W.3d 450, 452. A mistrial is "an extreme and drastic remedy that is appropriate only when the error at hand is so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial has been manifestly affected." *Barefield v. State*, 2024 Ark. 141, at 11, 696 S.W.3d 822, 830. Thus, declaring a mistrial is proper only when the error is beyond repair and cannot be corrected by any curative relief. *Franklin*, 2024 Ark. 9, at 4, 682 S.W.3d at 4.

On review, we consider several factors in determining whether a circuit court abused its discretion in denying a motion for mistrial, including whether the allegedly prejudicial statement was deliberately induced and whether an admonition to the jury pool could have cured any resulting prejudice. *Id*. at 5, 696 S.W.3d at 4. An admonition to the jury pool typically cures any prejudicial statement unless the statement is so patently inflammatory that justice cannot be served by continuing the trial. *Id*., 696 S.W.3d at 4.

The record does not support Singleton's assertion that Ray's statement warranted a mistrial. Ray was not prompted by the State to make the statement but volunteered that he was a lieutenant at the Crittenden County jail and believed this created a conflict of interest. The nature of Ray's potential bias was then explored at the bench outside the hearing of the jury pool, and the circuit court dismissed him immediately on the basis of his

responses. Moreover, Ray's statement referenced only his employment and his belief that it created a conflict of interest; it did not mention Singleton or indicate that Singleton had been, or was currently, incarcerated. The circuit court further clarified to the jury pool that Ray had been excused solely because of his employment with the Crittenden County Sheriff's Department.

Even if we were to construe Ray's statement as an indirect reference to Singleton's incarceration—which the record does not support—we have held that a "single, inadvertent reference to a prior conviction or *incarceration* is ordinarily curable by an instruction." *Walker*, 2025 Ark. 127, at 5, 719 S.W.3d at 453 (citing *Williams v. State*, 2011 Ark. 432, 385 S.W.3d 157; *Kimble v. State*, 331 Ark. 155, 959 S.W.2d 43 (1998)). Here, even assuming Ray's statement could be construed as a reference to Singleton's incarceration, the circuit court immediately provided a curative clarification to the jury pool.

Under these circumstances, no prejudicial statement was made, and the circuit court's clarification to the jury pool further mitigated any potential concern. Because the alleged error was neither inflammatory nor incapable of cure by admonition, the circuit court did not act improvidently, thoughtlessly, or without due consideration in denying Singleton's motion for a mistrial. Accordingly, Singleton's first argument on appeal fails.

B. Singleton's *Batson* Challenge

For his second argument, Singleton argues the circuit court erred in overruling his *Batson* challenge to the State's peremptory strikes of four black prospective jurors during the jury selection process. He believes the State's proffered race-neutral reasons were

6

insufficient to dispel the inference that the strikes were motivated by racial discrimination. Again, we disagree.

Nearly forty years ago, the Supreme Court of the United States opined that the Fourteenth Amendment to the United States Constitution "prohibits all forms of purposeful racial discrimination in [the] selection of jurors." *Batson v. Kentucky*, 476 U.S. 79, 88 (1986); *see also Clay v. State*, 290 Ark. 54, 58–60, 716 S.W.2d 751, 754–55 (where this court first encountered this issue and recognized *Batson* as the controlling law on this subject matter). Most recently, we have reiterated that principle in *Nelson v. State*. 2024 Ark. 24, at 10, 683 S.W.3d 177, 187–88 ("[T]he State in a criminal case may not use its peremptory strikes to exclude jurors solely on the basis of race.").

At trial, once a *Batson* challenge is made, the circuit court must conduct a three-step inquiry to determine whether a *Batson* violation occurred. *Id.*, 683 S.W.3d at 188. First, the challenger must present facts to establish a prima facie case of purposeful discrimination. *Id.*, 683 S.W.3d at 188. Second, upon a prima facie showing of systematic discrimination, the opponent to the challenge must provide a race-neutral explanation for its peremptory strike(s). *Id.*, 683 S.W.3d at 188. Unless discriminatory intent appears in the opponent's explanation, the reason proffered will be considered race neutral. *Id.*, 683 S.W.3d at 188. Third, the circuit court must decide whether the challenger of the peremptory strikes has proved purposeful discrimination. *Nelson*, 2024 Ark. 24, at 10, 683 S.W.3d at 188. On appeal, we will not reverse a circuit court's finding on a *Batson* challenge unless its decision was clearly against the preponderance of the evidence presented at trial. *Id.*, 683 S.W.3d at

7

188. Deference is given to the circuit court because it alone has the opportunity to observe the parties and assess their credibility during this process. *Id.*, 683 S.W.3d at 188.

At trial, the State exercised four peremptory strikes against Jade Jones and Dafney Jones, two black females, and Theoplis Macnifcent and Dareus Willis, two black males. In his objection, Singleton argued that "[a]ll of [the State's] strikes have been [against] African-American[s]" and the responses given by those jurors were not materially different from those of other prospective jurors whom the State did not strike. The State then offered race-neutral explanations for each strike.

The State explained it struck Jade Jones because she has a relationship with Hampton's family. The State struck Dafney Jones because she appeared disinterested in participating in the trial, was uncooperative, appeared more friendly with defense counsel than with the State, and stated on several occasions that she did not want to be present. The State struck Macnifcent because he appeared inattentive, noting he was "going to sleep at times" and "wasn't paying attention." Finally, the State struck Willis because he took a long time to respond to questions, appeared caught off guard during questioning, and raised concerns about his attentiveness.

The circuit court evaluated these explanations and found them to be race neutral. With respect to Jade Jones, the circuit court accepted the State's explanation regarding her relationship with Hampton's family. Regarding Dafney Jones, the circuit court noted that her body language "was not good" and appeared to be more detrimental to the State than to the defense. Concerning Macnifcent, the circuit court observed that it had also noticed him with "his eyes closed often" and rubbing his forehead as though he were attempting to

8

stay awake. As to Willis, the circuit court acknowledged that his dismissal presented a closer question and requested additional explanation from the State. After further discussion, the State reiterated its concerns regarding Willis's attentiveness and responsiveness during questioning. The circuit court ultimately credited the State's explanation, noting the State was in the best position to observe Willis's demeanor during the entire process.

After considering the parties' arguments and the State's proffered explanations, the circuit court concluded that Singleton had not met his burden of proving purposeful discrimination. On this record, we cannot say the circuit court's ruling was clearly against the preponderance of the evidence. The circuit court followed the required three-step *Batson* procedure: allowing Singleton to establish a prima facie showing of purposeful discrimination; considering the State's race-neutral explanations for its peremptory strikes; and making credibility determinations based on its firsthand observations of the prospective jurors during the selection process. Because credibility determinations in the *Batson* context are entitled to substantial deference on appeal, we affirm the circuit court's denial of Singleton's *Batson* challenge.

### III. *Conclusion*

Because the circuit court did not abuse its discretion in denying Singleton's motion for a mistrial and its ruling on the *Batson* challenge was not clearly against the preponderance of the evidence, we affirm.

Affirmed.

*Ronald L. Davis, Jr. Law Firm, PLLC*, by: *Ronald L. Davis, Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.

9