

Cite as 2013 Ark. 508

# SUPREME COURT OF ARKANSAS

**No.** CR–13–18

| | |
|---|---|
| TALIDEEN DAVENPORT | Opinion Delivered December 12, 2013 |
| APPELLANT | |
| | APPEAL FROM THE PULASKI |
| V. | COUNTY CIRCUIT COURT |
| | [NO. CR2006-256] |
| | |
| STATE OF ARKANSAS | HONORABLE BARRY SIMS, JUDGE |
| APPELLEE | |
| | AFFIRMED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Talideen Davenport appeals the order entered by the Pulaski County Circuit Court denying his petition for postconvicton relief under Rule 37.1 of the Arkansas Rules of Criminal Procedure. For reversal of that decision, he contends that the circuit court erred by not finding that his trial counsel was ineffective for failing to object or secure his waiver when the circuit court, rather than the jury, imposed his sentences for a firearm enhancement and his convictions for unlawful discharge of a firearm from a vehicle. We affirm.

In 2006, the prosecuting attorney in Pulaski County charged Davenport by amended felony information with capital murder and three counts of unlawful discharge of a firearm from a vehicle. The information also alleged that Davenport was an habitual offender and that his sentences were subject to enhancement, pursuant to Arkansas Code Annotated section 16-90-120 (Repl. 2006), for employing a firearm during the commission of the offenses.



Subsequently, a jury found Davenport guilty of capital murder and the three counts of unlawful discharge of a firearm from a vehicle. The jury also found that Davenport used a firearm when committing each offense. Because the State waived the death penalty, the circuit court automatically sentenced Davenport to life in prison without the possibility of parole for capital murder. *See* Ark. Code Ann. § 5-10-101(c)(1) (Repl. 2006); Ark. Code Ann. § 5-4-602(3)(B)(ii) (Repl. 2006). The court also sentenced Davenport as an habitual offender to concurrent terms of thirty years in prison for the unlawful-discharge convictions and to a single consecutive term of fifteen years for a firearm enhancement. This court affirmed his convictions and sentences. *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008).

Davenport subsequently filed a timely, pro se petition for postconviction relief alleging ineffective assistance of counsel. His claims included the allegation that his trial counsel was ineffective for not objecting when the circuit court, instead of the jury, assessed the sentences for the firearm enhancement and the unlawful-discharge convictions. The circuit court denied the petition without a hearing. Davenport appealed, and this court reversed and remanded because the circuit court failed to make adequate findings of fact on this issue. *Davenport v. State*, 2011 Ark. 105 (per curiam). Citing *Haynie v. State*, 257 Ark. 542, 518 S.W.2d 492 (1975), we observed that punishment under the firearm-enhancement statute should be set by the jury and not by the court when a defendant is tried by a jury. Although recognizing that Davenport's claim did not constitute fundamental error, we concluded that he might have a cognizable claim of ineffective assistance of counsel for the failure to object

SLIP OPINION

to sentencing by the court on the firearm enhancement. We also observed that Davenport's due-process rights were not violated when the circuit court imposed the sentence of life without parole for capital murder because that was the only sentencing option available due to the State's waiver of the death penalty. However, we said that the same was not necessarily true for the unlawful-discharge convictions because a range of punishment was available on those charges. Although the State argued that Davenport waived sentencing by the jury in accordance with Rule 31.2 of the Arkansas Rules of Criminal Procedure, we concluded that the record of trial did not clearly demonstrate that there had been a waiver by defense counsel in open court or that the defendant was present when the waiver allegedly occurred, as the discussions regarding sentencing took place in a bench conference after the jury had announced its verdicts.

On remand, Davenport retained counsel, and the circuit court held a hearing that focused on the issue of waiver of sentencing by the jury. William O. James, Jr., Davenport's trial counsel, testified that he recalled a bench conference where a waiver of sentencing by the jury on the firearm enhancement and the unlawful-discharge convictions was discussed because Davenport was to receive a mandatory life sentence for capital murder. However, James had no specific recollection of discussing the waiver with Davenport, but James said that it was his habit to do so and that "it's hard to imagine I wouldn't do it."

Davenport testified that he remembered the lawyers approaching the bench after the jury had rendered the guilty verdicts, but he said that he could not hear the conversation that the lawyers were having with the judge. He did not recall a discussion with James about

SLIP OPINION

permitting the judge to sentence him for the firearm enhancement or the unlawful-discharge-of-a-firearm convictions.

John Hout, the lead attorney in Davenport's prosecution, testified that it is his practice in capital cases, where the death penalty is not at issue, to discuss with defense counsel the possibility of waiving jury sentencing on any remaining charges because the "amount of time would be irrelevant due to the fact that he would serve life without parole on the capital." Hout remembered having such a discussion with James, and he recalled James having a private conversation with Davenport prior to the bench conference where James indicated that Davenport would waive jury sentencing on the remaining charges. Hout also made a notation on his case file that the defendant had waived jury sentencing. On cross-examination, Hout said that he was not privy to what James and Davenport had discussed in their private conversation prior to the bench conference, and Hout stated that Davenport was not present at the bench conference when James waived sentencing by the jury.

At the conclusion of the hearing, the circuit court once again denied Davenport's petition for postconviction relief. In its written order, the circuit court found that James had agreed to waive sentencing by the jury and that James had not varied from his usual practice of securing consent to do so. The court also found that, even if Davenport had shown that counsel's representation was deficient, he had not demonstrated that the outcome would have been different. Davenport timely filed a notice of appeal from the circuit court's order.

On appeal, Davenport argues that decisions from this court establish that punishment should be set by the jury and not the circuit court when a defendant is tried by a jury. He



contends that the record of trial shows that his trial counsel did not object when the circuit court set his sentences for the firearm enhancement and the unlawful-discharge convictions. Davenport also argues that the trial record and evidence adduced at the Rule 37 hearing establish that trial counsel did not obtain his consent for the circuit court to impose the sentences. Thus, he contends that the circuit court erred by not finding that he had received ineffective assistance of counsel.

The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). There is a strong presumption that trial counsel's conduct falls within the wide range of professional assistance, and an appellant has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55; *McCraney v. State*, 2010 Ark. 96, 360 S.W.3d 144 (per curiam). Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Holloway v. State*, 2013 Ark. 140, ___ S.W.3d ___.

SLIP OPINION

Thus, a petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Cunningham v. State*, 2013 Ark. 304, ___ S.W.3d ___ (per curiam). The petitioner also must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*. The language, "the outcome of the trial," refers not only to the finding of guilt or innocence, but also to possible prejudice in sentencing. *Green v. State*, 2013 Ark. 455 (per curiam). Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Bond v. State*, 2013 Ark. 298, ___ S.W.3d ___ (per curiam). As a consequence, we need not consider the first prong of the *Strickland* test if we determine that counsel's alleged deficiency did not prejudice the defendant. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

This court does not reverse a denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id*.



In our bifurcated system of trial, after a jury finds guilt, the defendant, with the agreement of the prosecution and the consent of the court, may waive jury sentencing and have the court impose sentence. Ark. Code Ann. § 16-97-101(5) (Repl. 2006). A defendant may waive the right to a jury through counsel, so long as the waiver is made in open court and in the presence of the defendant. Ark. R. Crim. P. 31.2; *see also Bolt v. State*, 314 Ark. 387, 862 S.W.2d 841 (1993). Davenport is correct that, absent a waiver, it is generally improper for a circuit court to assess a defendant's sentence in place of a jury. *See Barnes v. State*, 258 Ark. 565, 528 S.W.2d 370 (1975); *Redding v. State*, 254 Ark. 317, 493 S.W.2d 116 (1973). With respect to the firearm-enhancement statute, this court has held that the fact-finder, whether it be a jury or the judge sitting as the trier of fact, should determine whether a firearm was employed in committing the offense and also should assess the enhanced penalty. *Brown v. State*, 259 Ark. 449, 534 S.W.2d 213 (1976). In *Johnson v. State*, 249 Ark. 208, 458 S.W.2d 409 (1970), this court set aside a sentence for a firearm enhancement where the use of a firearm was not alleged in the information, and the circuit court, of its own volition, made an independent determination as to the use of a firearm and imposed the enhanced sentence in addition to the sentence set by the jury. We held that the circuit court's action deprived Johnson of his constitutional right to be informed of the nature of the accusation against him, as well as the right to trial by jury. We have also found error where the jury determined whether a firearm was employed but the court imposed the enhanced sentence instead of the jury. *Cotton v. State*, 256 Ark. 527, 508 S.W.2d 738 (1974). We noted that the same error occurred in *Haynie, supra*, but we declined to reverse in that case



because the issue was raised for the first time on appeal. In *Haynie*, the direct appeal also addressed the denial of the appellant's motion for a new trial in which he alleged ineffective assistance of counsel based on counsel's failure to object when the circuit court set the sentence for the firearm enhancement rather than the jury. We rejected that claim, holding that it was a matter of trial strategy, namely that "the judgment of appellant's counsel was dictated by the belief [that] the trial court would, most likely, be more lenient in the imposition of a sentence for the use of a firearm than would the jury." *Haynie*, 257 Ark. at 547, 518 S.W.2d at 496.

In *Watkins v. State*, 2010 Ark. 156, 362 S.W.3d 910 (per curiam), we also had occasion to address this issue in a postconviction setting. As in this case, Watkins claimed that his trial counsel was ineffective by not raising an objection when the circuit court, sua sponte, imposed the sentence on Watkins's firearm enhancement rather than submitting the issue to the jury. Watkins alleged that he was prejudiced because he received a greater sentence from the court than he would have if the jury had been allowed to determine his sentence on the enhancement issue. Watkins based his argument on the fact that he received the maximum enhancement from the circuit court, and he maintained that the jury would have imposed the minimum sentence. We rejected this claim of prejudice on the ground that it was speculative and bereft of any factual support. *See also Perry v. State*, 2011 Ark. 434 (per curiam) (dismissing a claim of ineffectiveness for failure to object to sentencing by the court instead of the jury because the assumption that the jury might have assessed a more lenient sentence was not sufficient to demonstrate prejudice).

In the case at bar, Davenport contends only that the circuit court erred by not finding that counsel's performance was deficient by either failing to object when the circuit court imposed the sentences or to obtain his consent for waiving sentencing by the jury. Yet, Davenport wholly ignores the prejudice prong of the *Strickland* test that is necessary to succeed on an ineffective-assistance-of-counsel claim. "[T]he standard for judging the effectiveness of counsel requires a showing of more than the failure to raise an issue; the petitioner must establish prejudice at trial under *Strickland*." *Huls v. State*, 301 Ark. 572, 576, 785 S.W.2d 467, 469 (1990). In other words, the petitioner must demonstrate a reasonable probability that the jury would have reached a different result. *Id.* Because Davenport does not assert any claim of prejudice, we must affirm, which makes it unnecessary for us to review the circuit court's finding that counsel's representation was not deficient. There is no reason for a court deciding an ineffective-assistance-of-counsel claim to address both components of the *Strickland* standard if the appellant makes an insufficient showing on one of the prongs. *Moten v. State*, 2013 Ark. 503, ___ S.W.3d ___.

Affirmed.

*Ronald L. Davis, Jr. Law Firm, PLLC*, by: *Ronald L. Davis, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.