Cite as 2019 Ark. 258

# SUPREME COURT OF ARKANSAS

No. CR-17-954

| | | |
|---|---|---|
| ZAVIER PREE | | Opinion Delivered October 3, 2019 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-15-2690] |
| V. | | |
| STATE OF ARKANSAS | | |
| | | HONORABLE HERBERT WRIGHT, |
| | APPELLEE | JUDGE |
| | | AFFIRMED. |

**JOSEPHINE LINKER HART, Justice**

This case is once more before us after we have twice remanded it to the circuit court to supplement the record with materials that were omitted from the official transcript. Zavier Pree appeals from his conviction by a Pulaski County Circuit Court jury of capital murder, aggravated robbery, and a firearm enhancement, for which he received, respectively, a sentence of life without parole, a concurrent term of 40 years, and a consecutive term of ten years in the Arkansas Department of Correction. On appeal, he argues that the circuit court erred when it denied his motion to suppress (a) his statements to police recorded in a police-interrogation room and (b) an alleged nonrecorded custodial statement made while police escorted him to a police car. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2).

Pree posted a Facebook status asking if anyone wanted to make quick money. The victim, Aaron Crawford, "liked" Pree's post, and the two started communicating through

private messaging. Pree promised Crawford that he would pay him $300 if he gave him a ride from Jacksonville to Little Rock. On July 9, 2015, Crawford picked up Pree and drove him to the U.S. Bank ATM in North Little Rock.

While parked at the ATM, Pree shot Mr. Crawford five times. Crawford crawled out of the car and ran across the street where witnesses called 911. North Little Rock police arrived a few minutes later. Crawford was covered in blood. Although he was in and out of consciousness, Crawford told police that he had been shot and his car was stolen.

While processing the crime scene, officers found Crawford's cell phone. When they opened the cell phone, a Google Maps page popped up. The map showed directions from Pree's apartment in Jacksonville to the ATM at U.S. Bank. Crawford's phone also revealed Facebook messages between Pree and him. On the morning of the murder, Pree messaged Mr. Crawford and told Crawford to tell him when he arrived in Jacksonville.

Officers went to Pree's address and saw Crawford's stolen car nearby. Subsequently, Pree and two females got into the stolen vehicle. Pree was immediately arrested.

An in-custody interrogation was conducted by Detective Dane Pedersen immediately after Pree's arrest. Pree was read his *Miranda* warnings, and each right was explained to him. Pree acknowledged in writing that he was read each warning and that he understood it. Pree told the detective that he was nineteen years old and a graduate of Little Rock Central High School. Following the *Miranda* warnings, Pree confessed to

2

shooting Crawford. Pree also told Detective Pedersen where to find the gun, and Detective Pedersen retrieved it from Pree's apartment. At some point during the interrogation, Crawford died.

While Detective Pedersen was retrieving the weapon, two Little Rock detectives asked to speak to Pree about two unrelated crimes. Pree was again Mirandized. Pree told the detectives that he did not want to speak to them. The Little Rock detectives left.

When Detective Pedersen returned with the gun, he informed Pree that he was under arrest for capital murder. Detective Gary Jones transported Pree to the Pulaski County Detention Center. During the transporting process, Pree initiated conversation with Detective Jones by asking why he was being charged with capital murder. According to Detective Jones, he explained to Pree that "through the course of the investigation and throughout the day it led the investigators to believe that he was responsible for that murder." Detective Jones further explained that the police knew how and where it had happened, but they still wanted to know why it had happened and why he had chosen Crawford as his victim. Pree told him that when he pulled up to the ATM, he got "nervous" because of Crawford's texts about a shooting in Dixie. Pree claimed that he shot Crawford one time, then crawled over the center console into the driver's seat of Crawford's car when Crawford fled. He then drove away in Crawford's car.

Prior to trial, Pree moved to suppress his videotaped confession. In his written motion, Pree alleged that his waiver of his right to remain silent was not "knowingly, voluntarily, and intelligently made." He further asserted that the State could not prove

3

that the statement he gave to Detective Pedersen was voluntary because the police employed coercion, intimidation, and deception to obtain his confession. These police tactics, in addition to his young age (nineteen), lack of experience with the criminal-justice system, and his being under the influence of drugs (marijuana, Xanax, and hydrocodone) at the time of the interview establishes that waiver was infirm. Regarding "deception," Pree specifically cited Detective Pedersen's claim that police had video of the murder; and his telling Pree that he was being interviewed about a "battery," which due to his inexperience, misled Pree into thinking it was equivalent to his fight at school when he was a juvenile. Pree also asserted that Detective Pedersen deceived him by downplaying the *Miranda* warnings by telling Pree that his signature meant he "understood" the rights, not that he was waiving them and by substituting the phrase "can be used" in place of "can and will be used" with regard to the potential jeopardy that he faced by giving incriminating information.

Additionally, Pree claimed the video demonstrated that he was overwhelmed by the situation--that he had the impression he could go home; he appeared confused or not fully able to comprehend some of the officers' statements and questions; and he "progressed from nervousness and some confusion to a state of panic during the interrogation." In the written motion to suppress, Pree's statement to Detective Jones was not mentioned. In a supplemental motion to suppress, Pree further challenged the way Detective Pedersen executed *Miranda* warnings, noting that Detective Pedersen told him they were just going to "talk" and that he was "not going to be adversarial." Pree asserted

4

that Detective Pedersen effectively failed to "warn" him as required by *Miranda v. Arizona*, 384 U.S. 436, 439 (1966), which charged police with making a suspect "more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his best interests." Again, Pree's unrecorded statements to Detective Jones were not challenged.

After a hearing, Pree and the State agreed to let the circuit court review the video of the interview. In a written order denying Pree's motion to suppress, the circuit court found that Pree had been read his *Miranda* warnings a total of four times and that Pree exercised his right to remain silent twice while in custody. The circuit court found no evidence of coercion, intimidation, or deception. Finally, the circuit court found that "[i]t is clear from the video and testimony that the Defendant understood his rights and obligations and knowingly and intelligently volunteered this information to police."

On appeal, Pree challenges the circuit court's denial of his motion to suppress the recorded statement he gave to Detective Pedersen and the unrecorded admissions that he made to Detective Jones. When we review a circuit court's denial of a motion to suppress, we make an independent determination based on the totality of the circumstances. *Coleman v. State*, 2017 Ark. 218, 521 S.W.3d 483; *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). We reverse the circuit court's ruling only if it is clearly against the preponderance of the evidence. *Conway v. State* 2016 Ark. 7, 479 S.W.3d 1. A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily.

*Id.* A person subject to a custodial interrogation must first be informed of his right to remain silent and the right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.*

Pree argues that his statement to Detective Pedersen was involuntary because it was induced by (1) a false promise of leniency, (2) deception about having the murder on surveillance video, and (3) failure to inform Pree about Crawford's death. Pree further argues that he was especially vulnerable due to his age, inexperience, and the length of the interview and that Detective Pedersen "downplayed" the significance of the *Miranda* warnings. This argument is not persuasive.

First, Pree points to the following exchange between Detective Pedersen and Pree as the factual predicate to his assertion that Detective Pedersen made a false promise of leniency and deceived him about the surveillance video:

| DETECTIVE PEDERSEN: | I mean . . . I mean, here . . . Here's the deal. First, I'm gonna . . . I'm gonna . . . Before . . . And I'm gonna let you go. There was nobody in that car but you two. Okay . . . |
| --- | --- |
| PREE: | Mm hmm. |
| DETECTIVE PEDERSEN: | [A]nd nobody came up to the car 'cause . . . because, again . . . |
| PREE: | Mm hmm. |
| DETECTIVE PEDERSEN: | [T]he Wyn . . . The Wyndham's got a camera located at their parking lot so anyway . . . So go ahead. So go ahead. |

We note that the phrase "I'm going to let you go," when considered in the broader context

of the interview, was not a promise to let Pree leave. It was merely Detective Pedersen telling Pree that he was going to let him continue his story, but only after Detective Pedersen made it clear that he did not believe Pree's account. Pree subsequently abandoned an account of the shooting that was obviously not credible.

Likewise, Detective Pedersen was not being deceptive when he told Pree at the beginning of the interview that he was questioning him about a battery. At that point in time, Crawford was still alive. It was not until later in the interview that Detective Pedersen learned of Crawford's death.

Regarding the Wyndham surveillance video, at that time, Detective Pedersen stated that he knew only that police were collecting surveillance video, and that he had no knowledge of what it showed or did not show. While Detective Pederson's assertion was false, we hold that it is insufficient to render Pree's statement involuntary. *See Conner v. State*, 334 Ark. 457, 469, 982 S.W.2d 655, 661 (1998) (holding that the detective's "false assertions that four of five witnesses reported seeing him with a gun at the time of the murder" was insufficient to render Conner's confession involuntary).

We also reject Pree's argument that he was especially vulnerable to police interrogation. While he was only nineteen, he was a high school graduate and had prior dealings with police as a juvenile offender. We are mindful that the interview lasted from 4:24 p.m. until 9:10 p.m., but Pree was not subjected to intense questioning during that time. Pree gave the essence of his confession after about only forty-five minutes. Much of the rest of the time was spent waiting for Detective Pedersen to retrieve the murder weapon

7

from Pree's apartment.

Finally, we reject Pree's argument that Detective Pedersen "downplayed" the significance of the *Miranda* warnings. In the first place, Pree was given the warnings upon arrest as well as at the start of the interview. We know from the video that while Detective Pedersen's tone was low-key and conversational, each of the rights was thoroughly explained to Pree. After each right was read to Pree, Detective Pedersen told him that if he understood the right, Pree was to initial next to it, which Pree did. Further, Pree asked Detective Pedersen to clarify want was meant by "I can stop the questioning at any time." Detective Pedersen explained that if at any time he did not want to talk anymore then the questioning would stop. Under the totality of the circumstances, we hold that the circuit court did not clearly err in rejecting Pree's argument that the issuance of *Miranda* warnings was rendered ineffective.

Pree also challenges the unrecorded statements that he made to Detective Jones. However, we note that Pree neither raised this challenge in his motions to suppress nor obtained a ruling. Accordingly, this issue is not preserved for appeal. *Tryon v. State*, 371 Ark. 25, 39, 263 S.W.3d 475, 486 (2007).

Rule 4-3(i) Review. In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

*Omar F. Greene*, for appellant.

8

*Leslie Rutledge*, Att'y Gen., by:  *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.