Cite as 2019 Ark. 256

# SUPREME COURT OF ARKANSAS

No. CR-18-1044

| | |
|---|---|
| DENZELL TERRELL BRAUD<br>APPELLANT | Opinion Delivered: October 3, 2019 |
| V.<br><br>STATE OF ARKANSAS<br>APPELLEE | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT<br>[NO. 60CR-16-2644]<br><br>HONORABLE CHRISTOPHER<br>CHARLES PIAZZA, JUDGE<br><br>AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

Appellant Denzell Terrell Braud was found guilty by a Pulaski County Circuit Court jury of capital murder and two counts of first-degree battery. Braud was sentenced to life imprisonment for his capital-murder conviction and an additional twenty years' imprisonment for his first-degree-battery convictions, to run concurrently to his life-imprisonment sentence. On appeal, Braud argues that the circuit court abused its discretion by denying his motion for mistrial on the basis of witness Dennis Driskill's statements during cross-examination. We affirm.

Because Braud does not challenge the sufficiency of the evidence against him, only a brief recitation of the facts is necessary. In June 2016, Braud lived in an apartment in Little Rock with his girlfriend, Sharonda Franklin; Franklin's son, Cordarell Collins;

Collins's girlfriend, Alexis Davis; and Davis's three-year-old son, K.D. Franklin testified that Braud also went by the nickname "N.O." In the months leading up to the murder, Franklin testified that Braud had become increasingly paranoid. Franklin testified that on the morning of June 6, 2016, she left the apartment on foot because she was afraid of Braud. Collins, Davis, and K.D. remained in the apartment. Franklin eventually called Collins and asked him to come pick her up, but Collins never arrived.

Davis testified that on the morning of June 6, she was awakened by Collins's cell phone. After the phone call, Collins told Davis that he was going to pick up his mother, and he left the bedroom. Immediately after Collins walked out of the bedroom, Davis heard gunshots and Collins screaming, "Why are you shooting me, stop shooting me N.O., don't shoot me N.O." Collins ran back into the room and closed the door. Davis handed Collins a gun. Collins shot one time before he fell to the ground. Collins later died from his injuries. As the gunman continued to fire shots through the bedroom door, Davis picked up the gun, got into the closet with K.D. and began shooting back. Both Davis and K.D. received non-life-threatening gunshot wounds.

Dennis Driskill, a witness for the State, testified that on June 6, 2016, he saw a man that he later identified as Braud outside his apartment. Driskill testified that Braud was holding a gun in his hand, and he had a pistol tucked in the back waistband of his pants. During cross-examination, defense counsel asked permission to approach Driskill. After defense counsel approached Driskill, Driskill stated, "I would appreciate it if you would step back from me, ma'am . . . I've already had a run in with you on the parking lot when

2

you chased me down in a vehicle, and I don't want you near me." Driskill accused defense counsel of threatening him and blocking his way into his apartment. Subsequently, the circuit court asked the jury to leave the courtroom. Outside the presence of the jury, defense counsel moved for a mistrial, arguing that the jury had been tainted through Driskill's accusations regarding defense counsel's threats. While arguing the motion for mistrial, both the defense and the prosecution referred to Driskill's prior combative behavior toward defense counsel during an earlier omnibus hearing. In denying the motion for mistrial, the circuit court stated that Driskill's spontaneous outbursts may have damaged his credibility with the jury and therefore would have been in Braud's favor. The circuit court admonished the jury as follows:

> Ladies and gentleman, we're going to keep going, but I want you to disregard the last dialogue we had that, that wasn't part of, of the dialogue we should be having about this trial, okay? Can ya'll do that? Sure you can.

"[A] mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when it cannot be cured by an instruction." *Travis v. State*, 371 Ark. 621, 625, 269 S.W.3d 341, 344 (2007). The grant or denial of a motion for mistrial lies within the sound discretion of the circuit court, and the exercise of that discretion should not be disturbed on appeal unless an abuse of discretion or manifest prejudice to the complaining party is shown. *King v. State*, 298 Ark. 476, 769 S.W.2d 407 (1989). Additionally, we have held that "an admonition will usually remove the effect of a prejudicial statement unless the statement is so patently inflammatory that justice could not be served by continuing the trial. *Kimble v.*

*State*, 331 Ark. 155, 959 S.W.2d 43 (1998)." *Williams v. State*, 2011 Ark. 432, at 8, 385 S.W.3d 157, 162.

On appeal, Braud argues that the circuit court abused its discretion in denying his request for a mistrial. Braud argues that Driskill's accusations against defense counsel conveyed to the jury his belief that defense counsel had threatened him before the trial and continued to threaten him during the trial. Thus, Braud contends that the jury could not help but conclude that the defense had threatened Driskill to keep him from testifying for the State. To support his position, Braud cites an opinion of the Florida District Court of Appeal for the proposition that a prosecution witness's assertion that defense counsel tried to conceal evidence is highly prejudicial. *See Clark v. State*, 881 So. 2d 724 (Fla. Dist. Ct. App. 2004). Such an accusation by a witness for the prosecution is highly prejudicial because it suggests to the jury that defense counsel is trying to conceal evidence of his client's guilt. *Id.* Further, Braud asserts that the circuit court's admonition to the jury was not sufficient to overcome the prejudice caused by Driskill's assertion that defense counsel had threatened him before trial and was continuing to threaten him while he was testifying.

Considering the record before us and our standard of review, we are not convinced that Driskill's statement rose to the level of granting a mistrial. Here, Driskill's statement was elicited by the defense attorney. Further, it was clear that defense counsel was aware of Driskill's hostility toward a certain defense attorney. Yet, this defense attorney was selected to conduct Driskill's cross-examination. Whether or not Driskill's statement was improper,

4

it was not of such magnitude that we must find the circuit court abused its discretion in denying the motion for a mistrial. Further, the circuit court's admonition to the jury was sufficient to cure any possible prejudice stemming from Driskill's remarks. Finally, we do not find Braud's citation to *Clark* persuasive. In *Clark*, the witness accused the defense attorney of telling her not to bring evidence to court. *Id.* at 726. She also accused the defense attorney of lying to her "many times." *Id.* However, unlike the present case, there was conflicting testimony concerning Clark's guilt, and the circuit court failed to give a curative instruction to the jury. *Id.* at 727. Accordingly, we find no abuse of discretion in the circuit court's refusal to declare a mistrial.

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been reviewed for all objections, motions, and requests that were decided adversely to Braud, and no prejudicial error has been found.

Affirmed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** On multiple recent occasions, I have dissented from a decision by this court to affirm a circuit court's denial of a motion for a mistrial. *See, e.g.*, *McClendon v. State*, 2019 Ark. 88, at 8, 570 S.W.3d 450, 455 (Hart, J., dissenting); *Finch v. State*, 2018 Ark. 111, 24, 542 S.W.3d 143, 154 (Hart, J., dissenting). In my view, this situation is equally deserving of a mistrial. Here, in front of the jury, a witness accused defense counsel of threatening him and blocking his way into his apartment; he also recounted statements from the prosecutor: "I spoke to [the deputy

prosecuting attorney], she told me, I do not have to speak to [the defense]." As the majority notes, "[s]uch an accusation by a witness for the prosecution is highly prejudicial because it suggests to the jury that defense counsel is trying to conceal evidence of his client's guilt," citing *Clark v. State*, 881 So. 2d 724 (Fla. Dist. Ct. App. 2004). The circuit court should have just declared a mistrial and lined up another trial date.

Nonetheless, the majority affirms, citing the increasingly familiar holding: "[A]n admonition *will usually remove the effect* of a prejudicial statement unless the statement is so patently inflammatory that justice could not be served by continuing the trial." *E.g.*, *Kimble v. State*, 331 Ark. 155, 160, 959 S.W.2d 43, 45 (1998) (emphasis added). I fear that the broad language of this holding, providing that an admonition will "usually" cure any prejudice, has been stretched beyond its limit. Whether to grant or deny a request for a mistrial, and whether any given impropriety may be cured by an admonition, should be determined on a case-by-case basis.

I dissent.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.