Cite as 2022 Ark. 187

# SUPREME COURT OF ARKANSAS
No. CR-22-81

| | | |
|---|---|---|
| ZAVIER MARQUIS PREE | | **Opinion Delivered:** October 13, 2022 |
| | APPELLANT | |
| | | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION |
| | | [NO. 60CR-15-2690] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE HERBERT T. WRIGHT, JR., JUDGE |
| | | |
| | | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Zavier Pree appeals from the denial of his Rule 37.1 petition following an evidentiary hearing in Pulaski County Circuit Court. On appeal, Pree argues that the circuit court clearly erred by finding the following actions of trial counsel not ineffective: (1) failing to challenge the admissibility of Pree's unrecorded statements or obtain a ruling on them; (2) failing to investigate or present evidence about Pree's alleged cognitive deficiencies; (3) calling witness Khayam Thomas despite being aware that Thomas intended to offer damaging testimony against Pree; (4) failing to review the redacted recording of Pree's statement before trial and permitting an excluded portion to be played in front of the jury; (5) failing to elicit exculpatory testimony from State's witness Caitlyn Uekman; and (6) failing to elicit evidence that no gunshot residue was recovered from Pree's hands. We affirm.

*Background*

In 2017, a Pulaski County jury found Pree guilty of capital murder, aggravated robbery, and a firearm enhancement for the shooting death of Aaron Crawford and the theft of his vehicle.[1] Pree was sentenced to life imprisonment without parole, forty years (concurrent), and ten years (consecutive) in the Arkansas Department of Correction. We affirmed Pree's convictions on direct appeal, *Pree v. State*, 2019 Ark. 258, 583 S.W.3d 380, setting out the circumstances surrounding the early-morning shooting as follows:

> Pree posted a Facebook status asking if anyone wanted to make quick money. The victim, Aaron Crawford, "liked" Pree's post, and the two started communicating through private messaging. Pree promised Crawford that he would pay him $300 if he gave him a ride from Jacksonville to Little Rock. On July 9, 2015, Crawford picked up Pree and drove him to the U.S. Bank ATM in North Little Rock.
>
> While parked at the ATM, Pree shot Mr. Crawford five times. Crawford crawled out of the car and ran across the street where witnesses called 911. North Little Rock police arrived a few minutes later. Crawford was covered in blood. Although he was in and out of consciousness, Crawford told police that he had been shot and his car was stolen.
>
> While processing the crime scene, officers found Crawford's cell phone. When they opened the cell phone, a Google Maps page popped up. The map showed directions from Pree's apartment in Jacksonville to the ATM at U.S. Bank. Crawford's phone also revealed Facebook messages between Pree and him. On the morning of the murder, Pree messaged Mr. Crawford and told Crawford to tell him when he arrived in Jacksonville.
>
> Officers went to Pree's address and saw Crawford's stolen car nearby. Subsequently, Pree and two females got into the stolen vehicle. Pree was immediately arrested.

*Id.* at 1–2, 583 S.W.3d at 381–82.

After his convictions were affirmed on direct appeal, Pree filed a petition for relief under Arkansas Rule of Criminal Procedure 37 and, with the circuit court's permission, an

---

[1]Before trial, the State waived the death penalty.

2

amended petition for relief under Rule 37. The circuit court held an evidentiary hearing on July 7, 2021, hearing the testimony of Pree's mother, Darlene Pree; trial witness Caitlyn Uekman; psychologist James Moneypenny, Ph.D.; and trial counsel Sonia Fonticiella and Omar Greene. Greene and Fonticiella testified regarding the defense strategy at trial, which was that a third person, Anthony "A.J." Burnett, Jr., had been in the vehicle and had been the shooter—not Pree. The parties stipulated that Pree's parents would have testified that Greene informed them that Dr. Moneypenny was unable to testify at trial due to a medical issue. They further stipulated that Pree himself would have testified that he was not consulted with regard to the decision to call Khayam Thomas as a defense witness. After posthearing briefs were filed, the circuit court entered a detailed order denying the petition. This appeal followed.

*Standard of Review*

When considering an appeal from a circuit court's denial of a Rule 37 petition, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), the circuit court clearly erred in holding that counsel's performance was not ineffective. *Henington v. State*, 2012 Ark. 181, at 3–4, 403 S.W.3d 55, 58. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Howard v. State*, 367 Ark. 18, 26, 238 S.W.3d 24, 31 (2006). The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so

3

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Henington*, *supra* (citing *Strickland*, 466 U.S. at 686).

Pursuant to *Strickland*, first, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Maiden v. State*, 2019 Ark. 198, at 3–4, 575 S.W.3d 120, 123–24. A petitioner making an ineffective-assistance-of-counsel claim bears the heavy burden of demonstrating that his counsel's performance fell below an objective standard of reasonableness. *Id.* A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id.* The petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Sartin v. State*, 2012 Ark. 155, at 3, 400 S.W.3d 694, 697. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* As a consequence, we need not consider the first prong of the *Strickland* test if we determine that counsel's alleged deficiency did not prejudice the defendant. *Davenport v. State*, 2013 Ark. 508, at 6, 431 S.W.3d 204, 208. "If it is easier to dispose of an ineffectiveness

4

claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* (quoting *Strickland*, 466 U.S. at 697).

## I. *Unrecorded Statements*

Turning to the points on appeal, Pree first argues that his trial counsel was ineffective for failing to challenge the admission of his unrecorded statements to Detective Gary Jones or obtain a ruling on them. Pree made these unrecorded statements as he was being transported from the detective division of the North Little Rock Police Department following a lengthy interview, which was recorded, to the county jail. On direct appeal, Pree argued that the circuit court erred by denying his motion to suppress unrecorded custodial statements to Detective Jones; however, this court held that the issue was not preserved for appeal. *Pree*, 2019 Ark. 258, at 8, 583 S.W.3d at 385. In this unrecorded statement Pree admitted that he shot the victim. He told Detective Jones that he got nervous and shot Crawford because of a post Crawford had made on Facebook about a shooting in Dixie. Pree argues that absent the unrecorded statements, there is a reasonable probability that the jury would have acquitted him or convicted him of a lesser offense. He contends that introduction of the unrecorded statements "shattered" trial counsel's argument, based on Pree's recorded statements, that A.J. Burnett was the shooter and that Pree was merely present.

Regardless of whether the suppression argument Pree now advances would have been meritorious on direct appeal if preserved, the circuit court did not clearly err in finding that, in light of the totality of the evidence presented at trial, Pree had not met his burden under the prejudice prong of *Strickland*. In Pree's recorded statement, he initially told Detective

5

Dane Pedersen that he had borrowed the vehicle from his friend Tank to go visit his daughter. He then told the detective that an unknown person had approached the car while they were in North Little Rock and shot Tank, and Pree drove away in fear. Pree later said that he had shot Tank in self-defense after Tank pulled out a gun, or what he thought was a gun. Finally, Pree said that A.J. had been in the car and was the shooter. Pree glosses over these inconsistent stories he told during his interview when he argues that the unrecorded statements undermined the defense theory that A.J. was the shooter. In addition to the inconsistent statements to police, the evidence against Pree was compelling and included the Facebook messages between Pree and Crawford, the Google map on Crawford's phone that led back to Pree's residence, Burnett Sr.'s testimony that A.J. was at home the morning of the shooting, and Thomas's identification of Pree as the sole occupant of Crawford's vehicle as it drove away. Given the totality of the evidence, we cannot say the circuit court clearly erred in finding no reasonable probability of a different outcome at trial had the unrecorded statement been suppressed. Accordingly, we affirm on this point.

## II. *Cognitive Deficiencies*

Pree argues next that the circuit court clearly erred by finding that trial counsel's failure to investigate or present evidence about Pree's cognitive deficiencies was not ineffective. Pree raises the following subpoints: trial counsel was ineffective for (1) failing to request an evaluation for his fitness to proceed under Arkansas Code Annotated section 5-2-327; (2) failing to challenge the voluntariness of his statements based on his low IQ; (3) failing to investigate or present the affirmative defense of mental disease or defect (MDD); and (4) failing to offer lay testimony from his parents in support of a MDD defense.

At trial counsel's request, the circuit court ordered a criminal-responsibility examination of Pree. The report from the Arkansas State Hospital was filed with the court on April 27, 2016, and the examiner did not diagnose Pree with MDD and found that Pree could appreciate the criminality of his conduct and conform his conduct to the law. He was diagnosed with malingering and several drug-use disorders. As noted in that forensic evaluation, Pree graduated from high school while receiving As and Bs in the 11th and 12th grades. The defense did not pursue an MDD defense, but they did hire psychologist James Moneypenny, Ph.D., to evaluate Pree before trial. Dr. Moneypenny's report reflected a full-scale IQ of 69, but in consideration of possible error, Pree's true score had a 90 percent possibility of being between 66 and 73. Dr. Moneypenny testified at the Rule 37 hearing that while Pree's IQ score of 69 is generally associated with a diagnosis of intellectual impairment, Pree's adaptive functioning appeared to be above the level associated with his IQ score. Dr. Moneypenny did not administer an objective test for adaptive functioning but based his opinion on Pree's word knowledge, his behavior during the interview, and his statement to the police. Further, Dr. Moneypenny testified that an individual with an IQ in Pree's range would be more susceptible to suggestion and to influence from authority figures such as police officers. He testified that people with Pree's IQ were generally considered to be equivalent to a ten-year-old as far as capacity to utilize information and appreciate the significance of questions and consequences. Dr. Moneypenny was not prepared to testify that Pree met the criteria for MDD––only that he had a low level of functioning. Dr. Moneypenny could not offer an opinion on whether Pree could understand *Miranda* warnings.

At the Rule 37 hearing, trial counsel testified that they did not believe Pree was cognitively challenged and that his family was adamant that he was not cognitively impaired. Greene testified that he intended to use Dr. Moneypenny in mitigation in the event the jury found Pree guilty of an offense less than capital murder.

Under this point, Pree first argues that his trial counsel was ineffective for failing to request a fitness-to-proceed examination pursuant to Arkansas Code Annotated section 5-2-327 (Supp. 2017). That statute, however, was not in effect at the time of Pree's trial in July 2017. *See* Act 472 of 2017, § 14. Rather, Arkansas Code Annotated section 5-2-305 (Supp. 2015) provided in pertinent part:

> (a)(1) Subject to the provisions of §§ 5-2-304 and 5-2-311, the court shall immediately suspend any further proceedings in a prosecution if
>
> (A)(i) A defendant charged in circuit court files notice that he or she intends to rely upon the defense of mental disease or defect.
>
> (ii) After the notice of intent to raise the defense of not guilty for reason of mental disease or defect is filed, any party may petition the court for a criminal responsibility examination and opinion.
>
> (iii)(a) It is not necessary for the petitioner to request a fitness-to-proceed examination if fitness to proceed does not appear to be an issue.
>
> (b) An examiner shall not render an opinion or issue a report on criminal responsibility if the examiner believes that the defendant is not fit to proceed.
>
> (c) In a case under subdivision (a)(1)(A)(iii)(b) of this section, the criminal responsibility examination shall be suspended and the court notified immediately that there is a question as to the defendant's fitness to proceed; or
>
> (B)(i) Any party or the court raises the issue of the defendant's fitness to proceed.
> (ii) The court shall order a fitness to proceed examination if it finds there is a reasonable suspicion that a defendant is not fit to proceed.

(2)(A) The fitness to proceed examination, and the criminal responsibility examination and request for an opinion on the defendant's criminal responsibility, are two distinctly different examinations.

The test for fitness to proceed, also called competency to stand trial, is "whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him." *Baumgarner v. State*, 316 Ark. 373, 382, 872 S.W.2d 380, 386 (1994). There is no evidence in the record that Pree lacked the ability to assist his attorneys or understand the proceedings against him. Further, Pree has failed to show how his intellectual functioning might have prevented the voluntary waiver of his *Miranda* rights or any reasonable probability of a different outcome at trial if an MDD defense had been pursued or testimony from his parents had been introduced. The circuit court rejected Pree's arguments on this point, and we discern no clear error. Accordingly, we affirm.

III. *Decision to Call Khayam Thomas as a Witness*

Under this point, Pree contends that trial counsel was ineffective for calling eyewitness Khayam Thomas. Thomas was nearby when the shooting occurred, and he testified at trial that he heard gunshots and then saw Crawford running toward him and falling down repeatedly. Thomas testified that Crawford told him that "they" took his car. On cross-examination, Thomas made an in-court identification of Pree as the person he saw driving away in Crawford's car. On re-cross, Thomas testified that he did not see another person inside the car aside from Pree.

Pree argues that the decision to call Thomas as a defense witness, despite a recent change in his proposed testimony[2] and the fact that Thomas was having mental-health issues, was objectively deficient performance. Certainly, Thomas's testimony was damaging to Pree's case. But as trial counsel testified, Thomas was the only person to hear Crawford's dying declaration. The use of the plural—"they"—was crucial to the defense theory that A.J. had been in the vehicle along with Pree. Counsel referred to the decision to call Thomas as a "calculated risk."

"Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel." *Swain v. State*, 2017 Ark. 117, at 3, 515 S.W.3d 580, 583 (quoting *Noel v. State*, 342 Ark. 35, 41, 26 S.W.3d 123, 127 (2000)). A matter of reasonable trial strategy does not constitute deficient performance. *Id.* (citing *Fukunaga v. State*, 2016 Ark. 164, 489 S.W.3d 644). Here, the circuit court found that trial counsel's attempt to introduce evidence of a third-party shooter through Thomas's testimony was within the realm of trial strategy and did not rise to the level of ineffective assistance of counsel. We hold that the circuit court did not clearly err, and we affirm on this point.

IV. *Redacted Recording of Pree's Statement*

Pree next argues that counsel was ineffective for failing to review the State's recording of his statement to ensure that proper redactions had been made and was further ineffective

---

[2]Before trial, the defense filed a motion in limine against lay-witness speculation, asking the circuit court to prohibit Thomas from testifying that the word "they" could mean a single person, as he had stated for the first time in a recent interview with defense counsel. The motion was granted.

10

for failing to request a mistrial when a statement regarding gang affiliation was played for the jury. Before trial, the circuit court granted Pree's motion in limine to exclude any evidence regarding alleged gang affiliation. Despite that ruling, during Detective Pedersen's testimony, the State played an excluded portion of Pree's recorded statement to the jury in which Pedersen told Pree: "Now, the girls have told us about this gang initiation <u>and this stripe</u> thing. Okay?" Defense counsel objected and requested an admonition to the jury, which the circuit court gave.

At the Rule 37 hearing, Greene testified that he did not believe that the brief mention of gang initiation rose to the level of the drastic remedy of a mistrial. The circuit court indicated in its order that a mistrial would not have been an appropriate remedy for the single excluded statement in a two-day trial. It is well settled that a mistrial is a drastic remedy and should be declared when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when it cannot be cured by an instruction. *Braud v. State*, 2019 Ark. 256, at 3, 583 S.W.3d 392, 394 (quoting *Travis v. State*, 371 Ark. 621, 625, 269 S.W.3d 341, 344 (2007)). An admonition will usually remove the effect of a prejudicial statement unless the statement is so patently inflammatory that justice could not be served by continuing the trial. *Id.*

Here, Pree has failed to show prejudice from the playing of the excluded portion of the recording. He received the only relief he was entitled to—an admonition to the jury to disregard the statement. *Compare United States v. Roark*, 924 F.2d 1426, 1432 (8th Cir. 1991) (ordering a new trial due to the prosecution's "relentless attempt to convict Appellant through his association with the [Hells Angels] motorcycle club"); *Ward v. State*, 308 Ark.

11

415, 827 S.W.2d 110 (1992) (in a death-penalty case, the admission of unsubstantiated allegations in the form of an affidavit alleging the defendant had committed rape and robbery, along with photographs depicting an unclothed victim, was prejudicial error). His reliance on *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004), in support of his argument that a mistrial was warranted is misplaced. In *Jackson*, the circuit court allowed expert testimony from a gang-intelligence detective that the defendant was a "slinger" and a "banger." On appeal, this court concluded that it was an abuse of discretion for the circuit court to allow that testimony. The present case is distinguishable because Detective Pedersen's brief statement was not admitted, the jury was properly admonished, and the statement had no context—it certainly did not carry the weight of expert testimony regarding a defendant's role in a gang.

In sum, any prejudice that resulted from playing the excluded statement does not rise to the level of meeting Pree's burden under *Strickland*. Therefore, the circuit court did not clearly err in finding that Pree was not entitled to relief, and we affirm on this point.

V. *Failure to Elicit Exculpatory Testimony from Caitlyn Uekman*

Under this point, Pree argues that counsel's failure to elicit certain testimony from Caitlyn Uekman constituted ineffective assistance of counsel. Specifically, Uekman told investigators that she had heard A.J. tell Pree he would be back around 2:00 or 2:30 on the morning of the shooting, after he got off work, to pick Pree up. Pree argues that "this key piece of information . . . strongly supported the defense's theory of the case," and failing to bring this statement to the jury's attention was deficient performance. Pree overstates the importance of this information. Fonticiella did get Uekman to admit that A.J. was going to

return to pick up Pree, but no specific time was given. Fonticiella testified that she interviewed Uekman before trial and that she wanted to minimize her time on the witness stand because she found the teenager unreliable and unpredictable.

The circuit court rejected Pree's argument as failing under both prongs of *Strickland*. The court found that the reasons given for not going further into this statement were within the realm of trial strategy, and considering the lack of corroboration of A.J.'s involvement and the time difference between 2:00–2:30 a.m. and the shooting shortly before 5:30 a.m., the statement would not likely have changed the result at trial. We see no clear error in these findings and affirm on this point.

## VI. *Lack of Gunshot-Residue Testing*

Finally, Pree argues that trial counsel's failure to elicit evidence that no gunshot-residue testing was conducted on Pree's hands constituted ineffective assistance of counsel in light of the State's theory that he had "recently" fired a weapon to commit the charged acts. At the hearing, Fonticiella testified that the lack of gunshot-residue testing was not brought up at trial because of the length of time between the shooting and Pree's questioning by police (around ten hours) and because he gave a statement in which he admitted handling the gun and shooting Crawford. She believed that an attack on the State's case for lack of testing would not have looked credible to the jury. Likewise, Greene testified that the decision was made not to raise the issue because the State could have "easily debunked" it, and raising it would have made the defense look like it was "grasping for something."

When a decision by counsel is supported by reasonable professional judgment, then such a decision is not a proper basis for a finding of ineffective assistance. *E.g.*, *Smith v. State*,

2010 Ark. 137, at 5, 361 S.W.3d 840, 845. The circuit court determined that Pree's argument on this point failed both prongs of *Strickland*. We agree that trial counsel's decision on this point constitutes reasonable trial strategy, and we affirm on this point.

Affirmed.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.